#### IN THE

## *Supreme Court of Errors*

#### OF THE

## STATE OF CONNECTICUT,

#### IN NOVEMBER TERM, 1816.

——— :::::: ⊕ :::::: ———

### ROCKWELL and another *against* BRADLEY.

THIS was an action of ejectment for several pieces of land. The ouster was laid on the 2d of *September* 1815. The action was commenced on the 25th of the same month.

The cause was tried at *Litchfield, August* term 1816, before *Trumbull, Smith* and *Baldwin,* Js.

On the trial, the plaintiffs claimed title to the demanded premises by virtue of three mortgage deeds from the defendant. The first was dated the 23d of *August* 1814, conditioned for the payment of 4000 dollars, by instalments, on the 1st of *March, April* and *May,* 1816 ; the second was dated the 6th of *December* 1814, conditioned for the payment of 3000 dollars, on demand ; the third was dated the 23d of *August* 1815, conditioned for the payment, by the 1st of *March* 1816, of such sum as should then be due. The mortgagor had remained in possession. No demand had been made of him to surrender the premises, or notice given to quit possession, before the commencement of the action. The defendant admitted the execution of the deeds ; but contended, first, that they were given on an usurious consideration, and were therefore void ; and exhibited evidence

*A mortgagee may bring an action of ejectment against the mortgagor in possession, without a previous demand, or notice to quit.*

$\frac{2}{75}$ $\frac{1}{371}$

VOL. II.                              1

*New-Haven,*
November,
1816.

Rockwell
*v.*
Bradley.

to establish that fact : Secondly, that he was not, from the nature of his right as mortgagor in possession, a disseisor of the plaintiffs, without a demand being made, or notice to quit given. The court instructed the jury, that such of the mortgage deeds as they should find to have been executed on a usurious consideration, were void, and laid no foundation for a recovery by the plaintiffs ; but that their action well lay, notwithstanding the other objections made by the defendant. The jury having found a verdict in favour of the plaintiffs, for two of the pieces of land demanded, the defendant moved for a new trial on the ground of a misdirection ; and the court reserved the question of law arising thereon for the consideration and advice of the nine Judges.

*Sherman* and *R. S. Baldwin,* in support of the motion. It has, long since, been settled, that tenants at will, and tenants at sufferance, are entitled to notice, before an action of ejectment can be brought. *Parker* d. *Walker* v. *Constable,* 3 *Wils.* 25. 1 *Cruise's Dig.* 274. 284.

The relation which subsists between a mortgagee and a mortgagor in possession, though not precisely the same as subsists between the landlord and his tenant at will and at sufferance, falls, it is apprehended, within the same principle. Indeed, the difference, whatever it is, is in favour of the mortgagor ; who, notwithstanding the legal title is in the mortgagee, is, for many purposes, considered as the real owner of the land. As such, he remains in possession, by a perfect understanding between them ; by the implied consent and license of the mortgagee ; liable, undoubtedly, to be turned out, when that consent is withdrawn. But until some act is done by the mortgagee, which manifests a determination to revoke that license, he can never be treated as a disseisor.

A disseisin is a wrongful act. It implies a *trespass,* and is always accompanied by an *adverse* possession. *Fairclaim* d. *Empson* v. *Shackleton,* 5 *Burr.* 2604. But the mortgagor, remaining in possession by the implied consent and license of the mortgagee, cannot, surely, be treated as a trespasser, during the continuance of that license. *Doe* d. *Foley* v. *Wilson,* 11 *East* 56. His possession is not *adverse* to the title of the mortgagee ; he is in, *under* the mortgagee ; and *his* possession is considered as the possession of the mortgagee. Hence,

it has been holden, that the statute of limitations does not run against the mortgagee, in favour of the mortgagor in possession ; (*Beach* v. *Royce*, 1 *Root* 244. *Beecher* v. *Cook*, 1 *Root* 298.,) as it would undoubtedly, were his possession adverse. *Fairclaim* d. *Empson* v. *Shackleton*, ubi sup. Hence, too, the mortgagee out of possession is permitted to convey and dispose of the mortgaged premises, which he could not do, were not the possession of the mortgagee, considered as *his*.

*New-Haven*,
November,
1816.

Rockwell
*v.*
Bradley.

We claim it as an established principle, that every tenant, in possession of lands for an indefinite period, by the express or implied consent of the owner, is entitled to notice, before he can be sued in ejectment. *Doe* d. *Foley* v. *Wilson*, 11 *East* 56. *Right* d. *Lewis & al.* v. *Beard*, 13 *East* 210. *Goodtitle* d. *Galaway* v. *Herbert*, 4 *Term Rep.* 680. There is no adjudged case in the *English* books in which the application of this principle to the case of a mortgagor in possession has been denied. The case of *Keech* v. *Hall*, *Dougl.* 21., was an action of ejectment against the assignee of the mortgagor ; and it was very properly holden, (there being no privity between the parties,) that he was not entitled to notice to quit. Lord *Mansfield*, indeed, intimated an opinion in that case, that the mortgagor himself would not have been entitled to notice ; but that opinion was extra-judicial, founded, it is apprehended, upon false premises, and has been declared by the supreme court of the state of *New-York*, in a decision of this precise question, not to be law. *Jackson* d. *Benton* v. *Laughhead*, 2 *Johns. Rep.* 75. *Jackson* d. *Carr* v. *Green*, 4 *Johns. Rep.* 187. See also *Jackson* d. *Ferris* v. *Fuller*, 4 *Johns. Rep.* 215., where the decision of *Keech* v. *Hall* was acquiesced in, though the *obiter* opinion of Lord *Mansfield*, as applicable to this question, was denied.

*Bacon*, contra. A *present interest* is vested by the mortgage deed in the mortgagee ; and he may *immediately* enter on the lands, though he is liable to be dispossessed upon performance of the condition by payment of the mortgage money, at the day limited. 2 *Bla. Comm.* 158. *Pow. Mort.* 205. & seq. *Newal & al.* v. *Right*, 3 *Mass. Rep.* 138. 155. If the mortgagor retains possession of, and exercises acts of ownership over property, the title of which is in the mortgagee, why may not the latter treat him as a wrong-doer ? To say that the mortgagor is in, by license from the mort-

*New-Haven,*
November,
1816.

Rockwell
*v.*
Bradley.

gagee, is to assume a fact which does not appear in this case, and which the court cannot infer from what does appear. It has been decided, and is admitted, that a lessee of the mortgagor, or a purchaser of his interest, is not entitled to notice to quit from the mortgagee; (*Thunder* d. *Weaver* v. *Belcher,* 3 *East* 449. *Jackson* d. *Ferris* v. *Fuller,* 4 *Johns. Rep.* 215.,) but a tenant of the mortgagor having no notice, stands on as high ground as the mortgagor himself. In one of the cases cited, Lord *Ellenborough* said, that a mortgagor is no more than a tenant at sufferance, and *not entitled to notice to quit.* 3 *East* 451. The case of *Jackson* d. *Benton* v. *Laughhead,* 2 *Johns. Rep.* 75., which is the principal authority relied upon by the counsel for the defendant, was decided by a divided court. The present Chief Justice of that court dissented, observing that he could see no more substantial reason for requiring notice to be given to a mortgagor where the proceedings against him are by ejectment, than there would be, should the mortgagee elect any other remedy prescribed by law. Besides, the notice required to be given by the majority of the court in that case, was six calendar months; which, indeed, is the usual term, where any notice is requisite. But this is inconsistent with the undoubted right of the mortgagee to take possession *immediately.* There is nothing in the nature of the condition annexed to a mortgage deed, which renders notice necessary or proper, or varies the rights of the mortgagee with respect to possession, or his remedy to recover it, from those of the grantee under an absolute deed. A mortgage deed conveys the title precisely as an absolute deed does, with this difference only, that the former is defeasible upon the performance of a certain condition.

SWIFT, Ch. J. The question is, whether an action of disseisin can be maintained, by the mortgagee, against the mortgagor, who continued in possession, without notice to quit.

The mortgagee, on the execution of the deed, is vested with the fee of the land, and is entitled to the immediate possession, though the law day has not elapsed. It is, however, the understanding of the parties, that the mortgagor shall retain the possession.

The principle contended for, on the part of the defendant,

is, that the mortgagor continues in possession by the license, consent, and agreement of the mortgagee; that the possession is lawful; and that he cannot become a disseisor, unless a surrender of possession be demanded, or a notice to quit be given. Of course, to maintain this action, we must treat as a disseisor a man who has lawful possession; which is repugnant to acknowledged principles.

To decide this question, we must consider the nature of the right of a mortgagor in possession. He has been likened to a tenant at will; but the resemblance is very remote; for, it is agreed, he would not be entitled to emblements, or accountable for rent. The truth is, such an estate is of a peculiar nature, precisely resembling no other. Lord *Mansfield* says, in *Keech* v. *Hall, Dougl.* 22., he is a tenant at will in the strictest sense. Though the inference from the fact that the mortgagor is left in possession, is an agreement that he shall continue it, yet this is under this condition, that he is so entirely subject to the will of the mortgagee, that he (the mortgagee) may consider his possession to be lawful, or treat him as a disseisor, without notice to quit. This results from the nature of an estate in mortgage, where the object is to give the mortgagee an absolute power over the pledge to enable him to secure or enforce the payment of the debt.

There is no inconsistency in the agreement that the mortgagor may continue in possession liable to a suit at the will of the mortgagee. Where a landlord gave a tenant notice to quit, at a certain time, but promised not to turn him out, unless the premises were sold; when sold, the tenant refused to deliver possession, and, on ejectment brought, contended that he could not be made a trespasser without further notice to quit, as the notice given was waived by the promise; the court held, that this was no waiver, because the landlord retained all the rights acquired by the notice to quit, and it was a mere indulgence that the tenant should remain in possession till the premises were sold. *Whiteacre* d. *Boult* v. *Symonds,* 10 *East* 13. So here the mortgagee indulges or suffers the mortgagor to remain in possession, reserving the right to bring an action of disseisin against him, at pleasure, without notice, or demand.

It is further said, it has been decided, that a sale of the mortgaged premises by the mortgagee, when the mortgagor was in possession, was not within the statute against the

Rockwell
*v.*
Bradley.

sale of lands by persons disseised thereof; and that this proves the possession of the mortgagor to be lawful. But there is no inconsistency in saying, that the possession of the mortgagee is not such as is contemplated by that statute, though he may be liable to an action of ejectment at the will of the mortgagee; for the mortgagee may treat his possession as lawful. I apprehend, however, the question does not turn on this point. The mortgagor and mortgagee have distinct and different rights to the same land, not dependent on possession; and these may be transferred, though the party selling is not in possession. Should the mortgagee assign the debt secured by the mortgage, this will carry the mortgage security to the assignee. It appears to me, then, that the nature of the right, or the estate of the mortgagor suffered to remain in possession, without any express agreement, is such that he is liable to be sued in ejectment by the mortgagee, without notice to quit, or demand of possession; that he is not entitled to emblements, or subject to the payment of rent.

Where an express agreement is made by the parties respecting the possession, that must govern.

I would not advise a new trial.

TRUMBULL and EDMOND, Js. concurred.

SMITH, J. If the defendant would have availed himself of want of notice to quit, he ought to have claimed that he was in possession by the license of the plaintiff; and this should have been left to the jury as a fact for them to find. So general is the usage for the mortgagee to permit the mortgagor to continue in possession, that I should have no doubt but the mere fact of his continuing in possession, when taken in connexion with the nature of the conveyance, would warrant a jury in finding a license, unless other circumstances should appear, adapted to remove the presumption arising from such fact. But the court cannot infer one fact from another as matter of law. In the action of trover, a demand and refusal are evidence of a conversion: but the court cannot, as matter of law, infer a conversion from a demand and refusal. The case of *Denn d. Brune* v. *Rawlins*, reported in the 10th of *East* 260. supports this opinion. In that case, the defendant had been in possession under a

defective lease, and, while thus in possession, had paid rent. *Bailey*, Justice, left it to the jury, whether by this receipt of the old rent the lessor did not agree that the defendant should continue in possession until he received some notice to quit; and the jury found an agreement accordingly.

It has been said, that the mortgagee may sell his interest in the land while the mortgagor remains in possession, without subjecting himself to the penalties of the statute against selling disputed titles; and also, that a fifteen years' possession of a mortgagor will not bar a right of entry, of the mortgagee. But in these cases, the mortgagee proceeds on the ground that the mortgagor is in possession by his license; and there is no doubt but he may elect to consider him as his tenant, if he chuses. In the present case, the mortgagee proceeds on the ground that the mortgagor is a tort-feasor, which throws the burthen on him of shewing a licence.

BRAINARD, J. also concurred in the opinion given by the Chief Justice.

BALDWIN, J. The only point in this case, is, whether the mortgagee can recover in ejectment against the mortgagor, before the law day has expired, without demand, or notice to quit.

I presume this is the first time this question has been presented to the consideration of this Court. To decide it correctly, I apprehend, we have only to enquire what is the relation between mortgagor and mortgagee. I consider the mortgagor as remaining in possession by the implied consent of the mortgagee, until the law day has expired; I say, by the *implied consent*, because such is the universal usage, where no express stipulation is made to the contrary.

Whenever a person is in the possession of the lands of another, by his consent, and without an express contract, he is the tenant of the landlord at will. Such is the case of the mortgagor. He holds at the will of the mortgagee by his implied consent, and cannot be considered a disseisor, (unless he does an act inconsistent with such tenancy) until the termination of the will of the mortgagee, manifested by notice to quit, or a demand of the property, and refusal to give possession. I am, therefore, of opinion, that the charge was incorrect, and that a new trial ought to be granted.

*New-Haven,*
November,
1816.

Rockwell
*v.*
Bradley.

GODDARD, J.   This case states, that two objections were made by the defendant, at the trial, to a recovery by the plaintiffs, of that part of the lands demanded, for which they had a verdict : First, that the mortgage deeds were usurious and void ; secondly, that the defendant was a mortgagor, and not liable to be sued in ejectment without a previous notice to quit.   The first was found against him by the jury ; and the other was over-ruled by the court ; and the question now is, whether the direction to the jury was right.

I am of opinion that it was.   The mortgage deeds are in common form, and do not contain, as is now usual in *England,* any express agreement, that the mortgagor shall continue in possession until the day of payment.   The mortgagee, upon the execution of the deed, has a right to the possession, subject however to be dispossessed, and have his deed defeated, by payment of the money.   I know of no difference between a conditional, and an absolute deed, in respect to the right of possession, or of action to recover the possession. The grantor in both may be left in possession ; and the possession of both, *may* be such as that a license to continue in possession *may* be inferred ; and so, if an action should be brought without notice or demand, the jury might be authorised to find that the defendant was not a disseisor,—that he was holding by license.   In neither case, is he necessarily so ; and the court in this case were called upon to say, that from the nature of the title the defendant was *necessarily* holding by the license and consent of the plaintiff.   If the court had been called upon to instruct the jury, that from the nature of the plaintiff's title, from his having left the defendant in possession, and seen him occupy and take the rents and profits, and other circumstances, they were at liberty to presume an agreement between the parties that the defendant should remain in possession until demand ; and the court had refused so to instruct the jury ; it would have presented a very different question for our consideration, upon which I give no opinion ; although I apprehend, this case furnishes sufficient evidence to repel all such presumption.   The defendant denied that he was holding under the plaintiffs ; and the object of this suit, was, probably, to try the validity of the plaintiff's deed.

There is nothing in the *nature of the title,* which forbids a recovery ; and the practice of our own courts is evidence of

*New-Haven*,
November,
1816.

Rockwell
*v.*
Bradley.

what has been understood to be the law of *Connecticut* on this subject. Actions in favour of mortgagees have repeatedly been brought, and recoveries had, and the present objection has never been made. We have no statute, usage, or practice requiring notice or demand in such cases.

But I apprehend, there is nothing to be found in the *English* authorities to warrant the opinion that this objection ought to prevail ; but the contrary.

It is true, there is no adjudged case. But in *Powell on Mortgages*, chap. vii. p. 205., it is said, that the mortgagee may immediately enter upon the lands. Nor is the mortgagor entitled to notice to quit. *Id.* p. 207. In *Keech* v. *Hall, Dougl.* 21., which was an action by the mortgagee against a tenant of the mortgagor, who was left in possession, Lord *Mansfield* says, " but here the question turns upon the agreement between the mortgagor and mortgagee ; when the mortgagor is left in possession, the true inference to be drawn is an agreement that he shall possess the premises at will in the strictest sense, and therefore *no notice is ever given him to quit,* and he is not even entitled to reap the crop," &c. It can hardly be credited, that Lord *Mansfield* would thus state the law, if it was not considered as *settled* in that country. He says, *no notice is ever given to quit.*

In *Thunder* d. *Weaver* v. *Belcher,* 3 *East* 449., Lord *Ellenborough* interposes in the argument of counsel, and expressly recognizes the authority of *Keech* v. *Hall,* as decisive against the claim of notice to quit. In giving his own opinion in that case, he says, " but a mortgagor is no more than a tenant at sufferance, not entitled to notice to quit." In *Birch* v. *Wright,* 1 *Term Rep.* 383., *Buller,* J., speaking of a mortgagor, says, he is neither tenant at will nor sufferance. " He is not considered as tenant at will in those proceedings which are in daily use between a mortgagor and mortgagee ; I mean, in ejectments brought for the recovery of the mortgaged lands. If he were tenant at will, the demise could not be laid on a day antecedent to the determination of the will. But it is every day's practice to lay the demise on a day long before there has been any actual determination of the will ; sometimes back to the time when the mortgage became forfeited ; and no objection has ever been made on that account." Again, " the mortgagee has a right to the actual possession whenever he pleases ; he may bring his ejectment at any

moment that he will ; and he is entitled to the estate as it is, with all the crops growing upon it." The same doctrine in another case is laid down by Mr. Justice *Lawrence.*

In 2 *Wooddeson's Lectures,* 153. *in notis,* speaking of the likeness of a mortgagor's interest to a tenancy at will, the author says, " in one respect, at least, his interest is inferior, *viz.,* that he may be turned out of possession by ejectment, *without notice to quit.*" *Cruise* in his *Digest,* tit. *Mortgage,* says, it is settled law that ejectment may be brought without such notice. I think it must, therefore, be admitted, that in *England* no such notice is necessary. In contemplation of law, the mortgagee is in possession, and may maintain eject-ment.

One case, however, is cited, where a different doctrine has been held in a neighbouring state ; that of *Jackson d. Benton* **v.** *Laughhead,* 2 *Johns. Rep.* 75. With all my respect for the court where this case was decided, and the learned Judge who pronounced the opinion in that case, I cannot consider it as law. That case was decided without argument, and by a divided opinion, *Thompson,* now Chief Justice, dissenting ; and the case seems rather to proceed on a rule of practice, and the supposed hardship of suffering a mortgagor to be sued without notice, than any thing else ; and the learned Judge intimates, that six months would be reasonable notice. Now, I do not consider it as matter of practice to be regula-ted by every court at pleasure. If indeed it was settled, that the defendant was entitled to any notice, the *time* of that no-tice might be matter of practice.

As to the supposed hardship, I believe the cases will be very few in which it will be experienced. Mortgagees are not de-sirous of taking possession of a mortgaged estate before fore-closure, and becoming accountable for the rents and profits. Why not hold notice of a petition to foreclose necessary ? This would give much more relief to the mortgagor. Peti-tions will often be brought, perhaps oppressively ; but eject-ments very rarely, if ever ; unless, as in this case, the mortgagor denies the title of the mortgagee.

And this brings me to another point, not made at the bar, but already hinted at, which I consider as decisive of this case, if the general question be settled either way. The case states, that the defendant claimed, in the first place, that the relation of mortgagor and mortgagee did not subsist between him and

*New-Haven,*
November,
1816.

Rockwell
*v.*
Bradley.

the plaintiffs. He says to the plaintiffs, " I *am not* your mortgagor. You have no title to the land in question. Your deed is usurious, and void. But if I should not succeed in proving this ; I claim that I *am* your mortgagor, tenant at will, am in, holding under you, by your license ; and therefore, am entitled to notice to quit." These defences are incompatible with each other, and cannot both be set up in the same trial. They destroy each other ; or rather, the first destroys the last. I understand it to be settled law, that defect of notice cannot be set up by a tenant who controverts the title of his landlord. 2 *Bla. Comm.* 147. *Christian's* notes.

I am therefore of opinion, that the charge to the jury was right, and would advise against granting a new trial.

HOSMER, J. The single question before the court, is, whether notice to quit was necessary, previous to the commencement of the plaintiffs' suit ? The defendant is mortgagor, and the plaintiffs are mortgagees, of the demanded premises. As is customary, the mortgagor remained in possession ; the law day had not arrived ; and the plaintiffs, without any previous notice to the defendant to quit the estate mortgaged, commenced their action of ejectment. In view of these facts, was the defendant a disseisor ?

Waiving all authority for the present, and looking at the intrinsic nature of the transaction, I am of opinion that there has been no disseisin. " A disseisin, is putting a man out of seisin, and ever implieth a wrong." *Co. Litt.* 153. *b.* 181. *a.* 2 *Bla. Comm.* 195. 3 *Bla. Comm.* 169. *Taylor d. Atkyns,* v. *Horde & al.* 1 *Burr.* 110, 111. What *wrong* has the defendant committed ? He has, pursuant to the general usage, and of consequence, with the implied consent of the plaintiffs, retained possession of the estate mortgaged. The mortgagees have never requested the possession. Where, then, is the wrong ? What higher evidence can be desired, of a licence that the mortgagor should remain in possession, than that which is derived from this conduct of the parties ? The most explicit language could not be more convincing.

Undoubtedly, the mortgagees, if there had been no agreement that the mortgagor should retain possession, might immediately have entered. 1 *Pow. Mort.* 205. This right they did not think proper to exercise, but *permitted* the

Rockwell
*v.*
Bradley.

mortgagor, of which the omission to enter, or give notice to quit, is decisive proof, to remain in the occupation of the premises. Shall the mortgagor, then, be considered a wrong-doer, for retaining possession pursuant to general usage, with the assent of the mortgagees? *Goodtitle,* d. *Gallaway,* v. *Herbert,* 4 *Term Rep.* 680.

If the occupation of the premises by the mortgagor was not tortious, how can he be found guilty of a disseisin? If it were wrongful, and he a disseisor, his possession was *adversary,* and uninterruptedly continued for fifteen years, would have given him a legal title to the premises. But it is an established point, that no length of possession by the mortgagor confers a title, for this plain reason, that it is not *adverse.* How then, if his possession is not adverse, unless contradictory propositions are consistent, can he be considered a disseisor?

It must be admitted, that the defendant was a wrong-doer, or a tenant of some description. That he was not the former, I think, is clear; and if he was the latter only, he has committed no disseisin. Notice to quit is requisite, to render the possession even of a tenant at will, or sufferance, adverse. 2 *Bla. Comm.* 146. 150. *Birch* v. *Wright,* 1 *Term Rep.* 387. *Goodtitle,* d. *Gallaway,* v. *Herbert,* 4 *Term Rep.* 680. *Parker,* d. *Walker,* v. *Constable,* 3 *Wils.* 25. *Timmins* v. *Rowlinson,* 3 *Burr.* 1609. *Doe,* d. *Bromfield & ux.* v. *Smith,* 2 *Term Rep.* 436. At least, in this case, a countermand of the implied licence to possess, was indispensably necessary.

It was said in the argument, that if the grantor of an absolute estate in fee simple should remain in possession, he would, unquestionably, be considered a disseisor. Of this there is no question; but where is the analogy between that case, and the one under discussion? The mortgagor is the owner of the estate mortgaged; " and the mortgagee has but a chattel, notwithstanding the form, the mortgage being only a pledge to him for the security of his money, and the original ownership of the land still residing in the mortgagor, subject only to the legal title of the mortgagee, *so far as such title is requisite to the end of his security.*" 1 *Pow. Mort.* 221. It is for this reason, that there exists an usage almost universal, to permit the mortgagor to retain the possession.

It has been taken for granted, that an ejectment might be sustained against the mortgagor, without any previous notice

*New-Haven*,
November,
1816.

Rockwell
*v.*
Bradley.

to quit. This impression, if it did not originate from the opinion of *Lord Mansfield*, in *Keech* v. *Hall, Doug.* 21. undoubtedly has been confirmed by it. " When the mortgagor," said that learned judge, " is left in possession, the true inference to be drawn, is, *an agreement that he shall possess the premises at will in the strictest sense.*" What, then, is the consequence? It is, said the same judge, " that no notice is ever given him to quit." But a tenant at will has right to a notice of this description, and without it he is not a disseisor. The case just cited, which has often been considered as conclusive against the mortgagor, did not bear the least relation to him. The plaintiff was a mortgagee, and the defendant the lessee of the mortgagor. Between the parties to a mortgage there is a privity, and the mortgagor remaining in possession, it is a fair inference, that he is in by *licence* of the mortgagee. But, with the mortgagee the lessee of the mortgagor has no privity ; and the *very act* by which he claims to possess the mortgaged estate, that is, the lease of the mortgagor, terminates the estate, and renders the pretended lessee a wrong-doer. *Co. Litt.* 55. 2 *Bla. Comm.* 146. The licence implied from the permitted possession of the mortgagor, is strictly personal, and invests him with no right to transfer the possession to another. In the case of *Thunder* d. *Weaver* v. *Belcher,* 3 *East,* 448. which was an action of ejectment brought by the mortgagee's lessee against the lessee of the mortgagor, this point was directly decided. It was said by Lord *Ellenborough,* " that a mortgagor is no more than a tenant at sufferance, not entitled to notice to quit, and one tenant at sufferance cannot make another." There could be no reasonable pretence, that notice to quit was necessary, when the defendant entered without authority, and by *wrong.* The *obiter dictum* relative to notice to a tenant at sufferance, were it necessary to examine it, would hardly be deemed law. " The tenant being once in by a lawful title, the law will suppose him to continue upon a title equally lawful ; unless the owner of the land, by some public and avowed act, such as entry is, will declare his continuance to be tortious." 2 *Bla. Comm.* 150.

It has been repeatedly decided in the state of *New-York,* that before the mortgagee brings his action of ejectment against his mortgagor, he must give him notice to quit the

Rockwell
*v.*
Bradley.

premises. *Jackson,* d. *Benton* v. *Laughhead,* 2 *Johns. Rep.* 75. *Jackson,* d. *Carr* v. *Green,* 4 *Johns. Rep.* 186. It likewise has been determined, that if the suit is commenced against the purchaser of the interest of the mortgagor, between whom and the mortgagee there is no privity of contract or estate, a previous notice to quit is not necessary. *Jackson,* d. *Ferris* v. *Fuller,* 4 *Johns. Rep.* 215. *Jackson,* d. *Simmons & al.* v. *Chase,* 2 *Johns. Rep.* 84. These determinations, I consider, as founded on correct principle. Not a case has been found, in which an ejectment has been brought against a mortgagor, and a notice to quit has been held necessary.

How extensive the practice has been in this state, to sustain actions of ejectment against mortgagors, without notice to quit, I am not informed : but, admit it to have been universal. A practice adopted without any legal sanction, and continued *sub silentio,* is too feeble a foundation on which to decide in opposition to plain principles.

It is of little importance, considering the judgment of the court, from which I have the misfortune to dissent, that I should express my opinion on the nature of the notice that should be given to mortgagors in possession. But, to avoid all misconception on this subject, I would observe, that a countermand of the implied licence, for a reasonable time, and in a reasonable manner, is all that I should deem requisite.

GOULD, J. The direction to the jury was, in my opinion, wrong. I know of no case, in which it has been determined, that a mortgagor in possession, is liable to the mortgagee, in trespass or ejectment, under circumstances like the present. And such a determination would, in my judgment, be repugnant to the plainest principles of law and justice. The cases of *Keech* v. *Hall, Dougl.* 21., of *Thunder* d. *Weaver* v. *Belcher,* 3 *East* 449. and *Jackson* d. *Ferris* v. *Fuller,* 4 *Johns. Rep.* 215., were all between mortgagees and the *assignees,* or *under-tenants,* of their mortgagors ; and may, therefore, be laid out of the question, agreeably to the distinction taken in *Jackson* d. *Simmons & al.* v. *Chase,* 2 *Johns. Rep.* 84., and *Jackson* d. *Ferris* v. *Fuller,* before cited. For as a mortgagor has, confessedly, no power to create an under-tenancy ; any one, holding under him, by a lease or license subsequent

to the mortgage, may, of course, be treated by the mortgagee, as a stranger and a trespasser. This point is perfectly clear.

But the question is very different, whether the mortgagor, when left in possession, is to be subjected to damages and costs of suit, without even a previous demand that he should surrender the possession, and when he was, perhaps, ready to surrender it, upon a moment's warning. The only original foundation of the supposed rule, that a mortgagor is liable to a recovery, in such a case, is a *dictum* of Lord *Mansfield's* in *Keech* v. *Hall.* But even that *dictum* contemplates, in my judgment, no such rule : For it manifestly relates, not to notice to quit, given before action brought, to a tenant at will, *as such,* but only to the *six months'* previous notice, required to be given, in cases of tenancy *from year to year;* though it appears, I confess, to have been understood in a more extensive sense, in the subsequent case of *Thunder* d. *Weaver* v. *Belcher.* But it is particularly worthy of remark, that the observations made in the latter case, in relation to the liability of the mortgagor, without notice to quit, are founded, professedly, upon the *dictum* in *Keech* v. *Hall;* and upon what I humbly conceive to have been a mistaken construction of it. The *dictum* in question is, that when the mortgagor is left in possession, " the true inference to be drawn, is an agreement, that he shall possess the premises, at will, in the *strictest* sense ; and, therefore, no notice is ever given him to quit." But by a tenant at will in the " *strictest* sense," nothing more is meant, by Lord *Mansfield,* than a tenant at will, in the original, strict, and proper sense of the term, as contradistinguished from a tenant from year to year. For the very distinction, and the only one to which he was adverting, was that between the rights of a mortgagor, or his assignee, in possession, on the one hand, and those of a tenant from *year to year,* on the other. And that the notice, to which he refers, is the *six months'* notice, required to be given to a tenant from year to year, is perfectly manifest, not only from his words, already cited, but from the context. For he observes, that the mortgagor possesses at will, in the strictest sense, and " *therefore,* no notice is ever given him to quit." But a tenant at will, in the strictest sense, known to the law, is, and always was, entitled to notice to quit, either by an express declaration, or some other act, of

*New-Haven,*
November,
1816.

Rockwell
*v.*
Bradley.

*New-Haven,*
November,
1816.

Rockwell
*v.*
Bradley.

the lessor, which would amount to a determination of the estate. 2 *Bla. Comm.* 146. 1 *Vent.* 248. *Co. Litt.* 55. 57. If then Lord *Mansfield* is supposed to have meant, that *because* a mortgagor is a strict tenant at will, he was entitled to *no* notice whatever, before action brought; he must, of course, be supposed to have argued, not only incorrectly, but absurdly : A supposition, not in itself very probable, and which those, who rely upon his authority, cannot surely admit. From this consideration alone, it would seem sufficiently clear, that the notice, to which, according to the *dictum* in *Keech* v. *Hall*, a mortgagor in possession is not entitled, is no other than the *six months'* notice, prescribed in the case of a tenancy from *year to year.* And if any doubt can still remain, it must certainly be removed by the words of Lord *Mansfield* himself, in another part of his argument in the same case. For in stating the point on which that case *depended*, as between the mortgagee and the mortgagor's lessee, he observes, that " if the lessee is to be considered as tenant from *year to year*, the plaintiff must fail." And he then adds, " the question, therefore, for the court to decide, is, whether by the agreement understood between mortgagors and mortgagees, the mortgagee has given an implied authority to the mortgagor, to let from *year to year*," &c. And the whole scope of his argument shows, beyond a doubt, that the notice, required in the case of a tenancy from *year to year, and that only*, is the notice which he says is not necessary, in an ejectment against the mortgagor in possession.

Admitting then, that the *dictum* in *Keech* v. *Hall* is correct, (and according to what I take to be the true construction of it, there is no need of questioning its accuracy ;) it does not decide nor affect the present case. For the question here raised, is not, whether a mortgagor left in possession is entitled to six months' notice, as tenant from *year to year* ; but whether, as a strict tenant *at will*, he is entitled to *any* notice at all, however short, before action brought ? That a common (or strict) tenant at will, is entitled to such notice, is unquestionable, from the authorities already cited. And it is equally unquestionable, that a mortgagor left in possession, is a strict tenant at will, or at sufferance, by an implied agreement or license from the mortgagee. It is incorrect to say, that an *actual* license must be proved by the mortgagor.

The license is implied, or presumed, by *law*, from the nature of the transaction, and the relation of the parties, unless the contrary appears. Such is the doctrine, laid down by Lord *Mansfield* himself, in *Keech* v. *Hall*; and such I take to be the doctrine universally received. Indeed, there are several familiar and undisputed rules, founded upon this precise doctrine, and which can be vindicated upon no other: As, that possession by the mortgagor for fifteen years, does not bar the mortgagee's entry, under the statute of limitations; and that the mortgagee may transfer his interest to a third person, or devise it, during the morgagor's possession. These analogies prove decisively, that the possession of the mortgagor, as such, is not deemed adverse to the mortgagee. The license, thus implied, is undoubtedly revocable; but the question is, whether the mortgagor's possession under it, shall be arbitrarily converted into an *ouster*, by the commencement of the mortgagee's action, *before* he has ever demanded the possession, or done any act amounting to a revocation of the license? This, I confess, appears to me, directly repugnant as well to the principles of law, as to the dictates of natural justice. It is not sufficient for the plaintiffs to say, that they have the legal title, and the right to take possession when they please. They confessedly have both; but it does not follow that they have a right of *action*. To entitle them to a recovery, there must have been an *ouster*. But here has been none. If, indeed, they had countermanded their implied licence, before suit brought, that would have rendered a further continuance of the defendant's possession, tortious: but can they subject him, as a tort-feasor, to damages and costs, *before* the licence is countermanded, and without giving him an opportunity to surrender the possession voluntarily, or even to know that they wished him to surrender it? This would be opposed to every analogy; for there is no case, I trust, in which the possession of a mortgagor, *as such*, is deemed to be adverse to the mortgagee. The instances already referred to, of the mortgagee's retaining his right of entry, and of his power to devise and assign his interest, notwithstanding the mortgagor's possession, amount to demonstration on this point. And to say, (as is contended), that the law will infer or presume an *ouster*, from the bare facts, that the mortgagee has the possessory title, and the mortgagor, the possession, would be to say,

New-Haven,
November,
1816.

Rockwell
v.
Bradley.

*New-Haven,*
November,
1816.

Hebron
*v.*
Marlborough

that the law presumes directly against its own presumption. It seems impossible, then, to support the present action : for no *actual* ouster, or adverse holding, is pretended. And I am glad to find, that in a neighbouring state, it has been determined, in two instances, that an action under circumstances like the present will not lie. *Jackson* d. *Benton* v. *Laughhead*, 2 *Johns. Rep.* 75. *Jackson* d. *Carr* v. *Green*, 4 *Johns. Rep.* 186. So far as these cases require notice to quit, before suit brought, they are, I think, abundantly supported by the principles of law and justice. Whether, indeed, six months' notice can be required, as in tenancies from year to year, is a distinct question, not now necessary to be considered. According to the *dictum* in *Keech* v. *Hall*, it cannot be. And as a mortgagor is not, upon eviction, entitled to the emblements ; there is, perhaps, no necessity for requiring it.

It has been suggested, that the consequence of a determination in favour of the defendant, would be, that mortgagees would keep their mortgagors continually under a notice to quit. It may be so ; though I have not the least apprehension of any such consequence ; especially, as it could answer no purpose on either side : for mortgagees have now, confessedly, a right to give notice at any moment they please. At any rate, no injustice would be done. For if a mortgagor should persist in holding possession, after the time appointed to quit, he would be actually a wrong-doer, and justly liable to be treated as such.

New trial not to be granted.