SYLVESTER P. BABCOCK *v.* THOMAS P. MAY AND OTHERS.

Parol evidence is not admissible to prove a contract to freight different from that expressed in the bill of lading.

THIS was an action of assumpsit, brought against the defendants, as owners of the schooner America, to recover the value of two hundred and five barrels of salt, shipped on board the America, at Buffalo, in the State of New York, to be delivered at Cleveland, in the State of Ohio, and which was lost upon Lake Erie.

Upon the trial, before the Supreme Court, in the county of Cuyahoga, the plaintiff offered in evidence the following bill of lading:

"No. 197. Shipped in good order, and well conditioned, by S. Thompson & Co., on board the schooner called the America, whereof is master, for this present voyage, Z. Brown, now lying in the port of Buffalo, and bound for Cleveland, Ohio. *To say: [335 "For Merwin Giddings & Co., 113 barrels, containing 120 50-280 barrels salt by weight; S. P. Babcock, 192 barrels, containing 205. barrels salt by weight. Shipping charges, $8.20. Charged M. G. & Co.; S. S. & Co., per Taylor. Being marked and numbered as in the margin, and are to be delivered in the like good order, and well-conditioned, at the aforesaid port of Cleveland, the danger of the lakes and rivers only excepted, unto Merwin Giddings & Co., they paying freight for the said salt at two-eighths per barrel, when delivered at their warehouses. In witness whereof the master of the said vessel hath affirmed to one bill of lading, all of this tenor and date, the one of which bills being accomplished, the other to stand void. Dated in Buffalo, October 21, 1827.

"ZADOC BROWN."

It also appeared that the America, being heavily laded, deviated from the usual and direct course from Buffalo to Cleveland, for the purpose of going to the port of Otter Creek, in Upper Canada, and during the voyage the salt was unavoidably lost, on the Canadian coast, in a storm.

The defendants then offered in evidence the *manifest*, duly proved by the collector of the port at Buffalo, by which it appeared that the America was authorized to proceed to Cleveland, *via* Otter

Creek; and also the depositions of certain persons, by which it appeared that John L. Kimberly, of the firm of S. Thompson & Co., who acted as shipping and forwarding merchant for the plaintiff, in the shipment of the salt, verbally agreed that the master of the schooner might go to Cleveland by the way of Otter creek, and that the master refused to take the salt on board the schooner upon any other terms. To this testimony the plaintiff objected, and the 336] court sustained the objection. A verdict was found for *the plaintiff, and a motion for a new trial was made by the defendants, which motion was reserved for the decision of this court.

Case, in favor of the motion:

The defendant contends that the court erred in rejecting the defendants' depositions, offered to prove the understanding and agreement of the shipper, that the vessel should touch at Otter creek.

A bill of lading is in its nature a mere receipt (is so called, 2 Starkie Ev. 331), and no reason is perceived why a receipt, acknowledging the receipt of goods or salt should be distinguished from other receipts. A receipt may be explained, superseded, and even contradicted, by parol evidence. It is only *prima facie* evidence. 3 Starkie, 1272, 1276, and cases cited; 3 Esp. 214; 2 Johns. 378; 3 Johns. 319; 5 Johns. 68; 2 Term, 866, etc.

Considering the bill of lading as the contract in writing, the defendants' evidence, offered and rejected, does neither vary, contradict, nor impeach it, and ought to have been received. The writing on the bill is to carry from Buffalo to Cleveland; nothing is said therein whether the carrying is to be by way of Otter creek, Erie, or straight through the lake. If it be presumed the carrying shall be straight through the lake—it is admitted such may be the *prima facie* presumption—but that presumption may be rebutted. One way in which the court, in this case, permitted the presumption to be rebutted was, by showing that it was usual and customary to deviate and stop at intermediate ports. Such evidence could only have been admitted upon the principle that the contract in the bill of lading was not, and is not *conclusive*, so as to govern the course of the carrying. Then why may not the presumption of a straight course as well be rebutted by express evidence of the agreement of the party, or his agent, that a particular course shall be pursued in carrying, as by showing custom to de-

Babcock v. May and others.

viate and stop at intermediate ports. Such evidence, in either case, no way interferes with the agreement for carrying from Buffalo to Cleveland; it is only regulating an indifferent matter, whether *the carrying shall be done by way of A. or B., both [337 leading to the contracted point. 3 Starkie, 1234, and onward, 1241, 1037, 1040.

The bill of lading, in this case, is not made as is usual. Compare it with Abbott on Ship. 217. The regular bill of lading, on its face, purports to be a contract between the shipper, the real owner of the property, and the carrier, and to deliver to the consignee. And the action is, in such case, in the name of the shipper or consignee, whichever is owner, against the carrier. In the present case, S. T. & Co. are the shippers, Merwin, Geddings & Co. consignees. The action is not in the name of either—it is not founded on the written contract. That bill contains property owned by two distinct sets of persons. No action can ever be sustained by Babcock upon it, or by means of it, otherwise than by introducing parol evidence to explain it. The contract appears to be between S. Thompson & Co., and the carrier, by Brown, the master; and it was alone by introducing parol evidence to show Babcock an owner of the salt that he could sustain the action. The contract in the bill was incidental evidence, I admit, to prove the agreement to carry, upon the principle that the bill was only incidental and *prima facie* evidence, to be controlled or explained by other testimony. But if the bill is conclusive, and not to be questioned, explained, added to, nor diminished, the court ought now to grant a new trial for having suffered other evidence of ownership to go to the jury.

As the suit is brought, it is not between those who, strictly speaking, are parties to the contract in the bill. The bill can not estop either party from producing other evidence relative to the subject matter. Upon the whole, it appears to me that the bills of lading on the lake are considered as mere memorandums of property received and to be carried, to what place, and to whom to be delivered; and are every day explained in practice. No action in this case can be sustained by Babcock without parol evidence to prove his ownership. It has been admitted for him. Parol evidence has also been admitted to show that vessels, by custom, may, and do deviate from a straight course. And without which every carrier on the lake would be liable if a loss happened.

338] *If, under all these circumstances, evidence of an express agreement, by the shipper, to touch at a particular point in the route can not be given, it is at least a particular case, and circumstanced a little extraordinary. 3 Starkie, Parol Evidence, 3, 1034, and onward.

WILLEY and STIRLING, contra:

1. Is it competent for the defendant to contradict the *bill of lading* by parol; if so, to what extent?

2. Are the declarations made by *forwarding merchants*, having no interest in, nor authority over the property, except to *forward* it, admissible and conclusive upon the owner, the plaintiff?

1. It is a well *settled* principle, that *parol evidence* can not be admitted to contradict, vary, alter, or explain a written contract, that all conversations *before* and *at* the time of making the *written contract* are merged.

Is a *bill of lading*, or a *written memorandum* to transport from one given place to another, upon certain conditions, and for a certain compensation, certain articles of property, as in said memorandum expressed, then *a contract?*

A *contract* is defined by the *common law* to be " an agreement *upon sufficient consideration* to do, or not to do, a particular thing." 2 Bl. Com. 442. Here, then, is an agreement by defendant to deliver the articles acknowledged to have been received (or shipped by plaintiff) upon *consideration* of plaintiff paying a specified compensation, and this in writing.

Lord Loughborough says, " *a bill of lading* is the written evidence of a *contract* for the carriage and delivery of goods sent by sea for a certain freight." 1 H. Bla. Ch. 359.

A *bill of lading* is negotiable; and in the hands of an assignee, the acknowledgment of the *receipt* of *freight is conclusive* upon the party. 5 Term, 683; 6 Mass. 425.

It is expressly treated as a *contract* by all the authorities. Abbott, 132–246, top paging.

If, then, a *contract*, why should *parol evidence* be admitted to contradict, etc., its terms? Is a *written contract* to build a house, to labor, to convey, and to do any other act, of a more solemn or 339] important nature than one to *transport* property upon *the *water?* If not, why should a different principle be applied to the one from which is applied to the other?

Babcock *v.* May and others.

But *it* is said to resemble a *receipt,* and can therefore be contradicted. It is not denied but that a *receipt* for *money* may be explained, or that it is not *conclusive* upon the party. So says 3 Starkie, 1044— and so is the law. But this no more proves that a *bill* of *lading* may be contradicted, than that a deed, or any other *instrument* or *contract* in *writing,* in which there is an acknowledgment of a receipt of money, can be, by parol. And if a receipt for money may be explained, no reason can be urged why a *receipt of goods* can not be; that is, so far as relates to the *receipt* or *receiving* of the goods, only that no adjudged case is to be found warranting it. But what is meant by "a receipt of money may be explained?" It is. that *this fact* may be controverted by parol; and the doctrine applies equally to deeds and instruments of the most solemn nature.

Thus, "upon failure of an annuity deed—upon an action brought by the plaintiff against the two grantors, to recover the consideration paid—one of the defendants, who was a surety only, was permitted to show, notwithstanding his having signed a receipt for the money, jointly with the other defendant, the principal, that he had never in fact received the money." Stratton *v.* Rastall and others, 2 Term, 356. But *vide* 2 Taunton, 141, Com.

But it will not be claimed that the *terms, covenants,* and *conditions* of such a deed can be *explained* or *contradicted* by *parol;* but why not, upon the principle contended for by the defendant? A deed is as much a receipt. as a bill of lading. It is the *receipt* of the money, in a deed, which forms the consideration for the *covenants,* etc. So the *receipt* of *property* in a *bill* of *lading,* and the freight to be paid on account of that property, which forms the consideration of the promises, etc., of the master or *ship owner*—and perhaps in analogy to the foregoing case from Term Reports, the defendant, in this case, might introduce *parol evidence* to show that actually *no salt* was ever received; and thereby contradict the *receipt.* But no adjudged case to be found, warrants such a procedure. And in McKinny *v.* Pearsall, 3 Johns. 318, the court admit *parol evidence* in relation to a *receipt* of *property,* solely upon the \*ground [340 that it was *consistent* with it, and not *contradictory.* Spencer, J., in delivering the opinion of the court, says: "If the *receipt* had been in terms more explicit than it is, it would be open to explanation. I mean *that kind of explanation not directly contradictory to, but consistent with it.*"

The cases referred to by the defendants' counsel, and all the

cases in the *books* upon this point, establish the *simple fact* that parol evidence is admissible to show whether money, or *no* money, or what *amount* was received; but not that this species of evidence is admissible to explain, or contradict every other part of an instrument, in which may be contained a *receipt* of *money* or *other property;* and the same arguments that can be drawn from this source to contradict or explain, by parol, *every* part of a *bill* of *lading*, may be used to contradict or explain a deed, or any other *written instrument* whatever.

A deed, or even a record, which is *conclusive* upon the *parties*, is not always *conclusive* upon *all points*. Thus, evidence is admissible to prove a *deed* was executed, or a *bill* of *exchange* made, at a time different from the *date*. Hall *v.* Casenon, 4 East, 477.

And *records* which are conclusive, as far as regards their *substance*, averments, and proofs, may be received to contradict them, as to *time* and *place*, and many other *particulars*. 1 Pick. 362; 5 Day, 160.

A *bill* of *lading* is a contract of as high a nature, and of as much importance as any other species of contract whatever; and the interests of the community, and its safety and welfare, require that *every guard* should be thrown around them which is consistent with *precedent*, and that they should not be exposed to the avarice, cupidity, and dishonesty of a class of men who have always the *means about* them of defeating the most *honest* claims, provided their solemnity and stability are destroyed, by suffering them to be contradicted or explained by *parol*.

Lord Ellenborough says: "I can recognize no property *but* that recognized by the *bill* of *lading*." 2 Camp. 38.

In Barber *v.* Bran, etc., *this precise point* is decided by the unanimous opinion of the court; and it is the only case to be found **341]** where the question is raised or decided in relation to *a bill of lading*. The *marginal note* is: "When the master of a vessel, receiving goods on board for transportation, gave to the *shipper* a *writing*, acknowledging the *receipt* of the *goods*, and stating that they were to be transported to the place of destination at customary freight, dangers of the seas excepted; it was held, that a *parol agreement* between the *shipper* and *master*, before and at the time of giving the writing, as to the mode of stowing the goods, was inadmissible to show the *terms* of the *shipment*, as all such communications between the parties are to be considered as *merged* in the *writing*. The *bill* of *lading* was in these words:

"Received on board the sloop *Mary* eight hogsheads of gin, of *Horace Barber*, to be transported from *Hartford* to *Boston*, at customary freight, dangers of the seas excepted.

"NATHANIEL HURLBUT.

"HARTFORD, *November* 27, 1816."

But it is said that the evidence offered does not contradict, vary, or impeach the written contract, but rebuts a *presumption* arising from it that the defendants were bound to proceed on the voyage by the nearest and shortest course. It is the same question, in a different shape. It is an attempt to attach, by parol, a different meaning to language, and, consequently, make a different contract from the written one. Abbott on Shipping, 239, says: "The master must proceed to the port of destination without delay, and without stopping at intermediate ports, or *deviating from the straightest and shortest course.*" And why? Because such is the contract in terms. The words in the bill of lading are, "Now lying in the port of Buffalo, and bound for Cleveland." Now a new contract must be made before Otter creek or the Canada shore is the place to which the vessel is bound, or to which she is permitted to go.

The *course* to be pursued and the *time* of leaving are *important incidents* to the contract, which the *law attaches*, and which are as binding as if expressly stipulated in the contract, and can not be rebutted or impeached by parol in the one case more than in another.

A *note* or *bond* in which *no time* is specified, when payable or due, the law declares them to be due *presently*, and *parol* *evidence is not admissible to contradict this fact or presumption. Thompsom *v.* Ketcham, 8 Johns. 148, top paging.

Chief Justice Kent says: "When the operation of a contract is clearly *settled* by *general principles* of law, it is taken to be the *true sense* of the contracting parties, and it is against established rule to *vary* the *operation* of a writing by parol proof."

Now the *course* which the master should have pursued, in going to *Cleveland*, is as well "*settled* by *general principles of law*" as the time of payment of a note in which no time is specified, and *parol proof* is as admissible in the one case as in the other. 1 Phil. Ev. 489, and see note.

2. Are the declarations of S. Thompson & Co., the forwarding merchants, admissible, etc.?

It appears that S. T. & Co. acted as the *agents* of the plaintiff in forwarding the property to Cleveland. Their *agency* consisted simply in *forwarding;* and . their powers, as agents, authorized them and required them to do this in the safest and most direct course, or at least in the *ordinary* and *usual course;* and they had no power or authority to send the property by *Otter creek,* or the *Canada shore* or *Green bay,* or any other place, unless particularly authorized so to do, or unless that was the *ordinary* and *usual course* pursued.

That Otter creek was the ordinary and usual course pursued by vessels in going from Buffalo to Cleveland is not contended, and therefore parol evidence is sought to be introduced to contradict the *written contract* made by the parties. But if admissible, does it help out the *defendant?* That S. Thompson & Co. had other than the ordinary powers of forwarding merchants is not contended. And what are those powers?

In Barber *v.* Bran, etc., this same question was raised. But Hosmer, C. J., in delivering the unanimous opinion of the court, omits to express a decided opinion, upon the ground that the question is not presented by the motion, but refers to Fenn et al. *v.* Harrison et al., 3 Term, 757–760, as containing the law on the subject, the point established in which case is, "that a *special agent,* under a limited authority, could not bind his principal by any act beyond the scope of such limited authority." The powers, 343] then, of forwarding *merchants are to forward property in the *ordinary* and *usual course,* in the *ordinary* and *usual* mode of conveyance, in vessels that are esteemed safe and seaworthy; and if they pursue a different line of conduct, the principal is not bound by their acts. And if S. Thompson & Co. could, as forwarding merchants, subject the plaintiff to the risk and hazard of passing from the American to the Canada shore, they could, for the same reason, subject him to the risks and delays of a trip to *Lake Superior.* In fact, there would be no limit to the *powers* of such *agents.* 3 Conn. 9.

If the America had to pass over to *Otter creek* before she proceeded on her way to Cleveland, S. Thompson & Co. had no power nor authority to ship the *salt* of the plaintiff on board of her—of course had no authority to consent to her going there, so as to bind the plaintiff; and, therefore, if *parol* proof were admissible in ordinary cases, it would not help or avail the defendant in this

case; and, therefore, the exclusion of it furnishes no ground for a *new trial*.

But it is contended by defendants' counsel that as *parol proof* was offered to show the rights of the plaintiff to bring this action, that, therefore, as it was introduced for one purpose, it ought to be for another. To this there are several conclusive answers.

1. It is always permitted to show, by parol, in what capacity an individual acts, whether as principal or agent, whether in an official or private capacity. 3 Stark. Ev. 1047; 7 Taunt. 295; 5 Wheat. 326.

2. The consideration of a deed, as expressed to have been received. The date, etc., may be explained or contradicted by parol. Still *parol*, etc., will not be admitted to contradict the terms, or covenants, etc. So that *parol* may be admitted for one purpose and not for another. 4 East, 477; 2 Term, 366; 14 Johns. 210.

3. If *parol* was given to show the right of the plaintiff, it was entirely unnecessary and a work of supererogation; for it clearly appears, from the bill of lading, that S. Thompson & Co. acted as agents for S. P. Babcock. "Shipped, etc., by S. Thompson & Co., etc., *for* S. P. Babcock;" the plaintiff's name opposite the property which belonged to him; and no one, by reading the bill, could doubt but that S. *Thompson & Co. acted as agents for the [344 plaintiff; and the contract, therefore, was not made by S. Thompson & Co. as *principals*, with *Brown*, the *master*. But if it did so appear from the bill of lading, parol evidence is admissible, as above shown, to explain this.

The bill of lading is according to the *forms* used in this country, and in all the *essential* and *substantial parts* like the one referred to by defendants' counsel, in Abbott, 217—not as *religiously molded*, nor as lengthy—but still, it is believed, as correct and as obligatory. 2 Conn. 389; 3 Conn. 9.

CASE, in reply:

The defendants' counsel are too well aware of the existence of the rule that parol evidence shall not be given to contradict or vary solemn written agreements, to entertain the least idea of disputing it. And as little did they suppose it necessary to cite Blackstone's Commentaries, or any other book, to show what a contract was, to the Supreme Court of Ohio. All the authorities cited in plaintiff's argument apply to sealed or other authentic and solemn

instruments, but have very little, if any reference, to a case like the one before the court. I shall, therefore, make no observations upon them. Those to the point, that parol evidence shall not be admitted to vary, etc., do not, I apprehend, apply to such a bill of lading as the one under consideration. Suppose A. makes a deed to B., with covenants of warranty and seizin, will the court hear evidence that B. acted in the purchase as agent for C., in order to enable C. to bring and maintain action on the covenants of warranty and seizin. Such is the case here. S. Thompson & Co. is one party in this contract, if it is one, and the owners of the schooner the other. Now, if it is on the footing of the conclusive written instruments, the action could alone be brought by S. Thompson & Co.; but the action is brought by S. P. Babcock, the party in interest. He has shown his interest, and because other evidence than the bill may be given, and has been given (and I admit properly), he has supported it, but could not upon the principle that the bill is exclusive and conclusive evidence between these parties. 345] And if the authority cited, 2 Camp. *38, proves anything to the case, it proves that the plaintiff ought to be nonsuit, because the bill of lading shows no property in Babcock. The words in the margin, " for S. P. Babcock," signify that such marks were on the barrels of salt, as the bill of lading explicitly states, in the clause immediately following, in the words " marked as per margin." Salt is marked with the initials, or name of the owner, at the works. Their owners change every day, but the marks remain, and are used in bills of lading in the same manner as the name of a manufacturer and No. stamped on the lead appended to a piece of broadcloth, which passes through numerous ownerships and invoices before it is finally consumed, always, however, answering the purpose of marginal description.

The authority, in Abbott, 239, produces the consequences mentioned in the opening argument, viz: that stopping at intermediate ports would render the carrier liable; and the court must permit parol evidence to control the ordinary bills of lading to rebut the presumption that a direct course of voyage was intended, or render liable the carrier in all cases of loss. There is no alternative. The universal practice, for thirty years past, plainly shows that the authority of Abbott, and other maritime and mercantile writers, either have no application on Lake Erie or must be received with great limitations.

Babcock *v.* May and others.

If the court shall be of opinion that the evidence rejected, as inadmissible to explain or aid the bill of lading, ought to have been admitted for the purposes offered, if the shipment had been made by Babcock and the bill of lading executed between him and Brown, the defendants' counsel submit, that a new trial ought to be granted, as it was upon the ground of admissibility that the evidence was rejected at the trial, and not because the agents, Thompson & Co., had no authority to make the arrangement offered to be proved.

The defendants' counsel insist, that the mere possession of the property, by a forwarding and commission merchant, lawfully obtained, enables the holder to make such contract for its transportation as he pleases, and the owner is bound. 2 Starkie, 57. Should the court think differently, however, as the evidence was rejected on the other ground, the defendant *had no opportunity to [346 prove the authority of Thompson & Co. to make the arrangement.

The defendant can abundantly prove that S. Thompson & Co., and the various companies of which S. Thompson has been a co-partner, have, for the last twenty years, exercised general and unlimited authority over property in their possession. No lake captain ever inquires what right they have over property. Thompson & Co. could have made an absolute sale of this salt as soon as it was received, and Babcock could never have reclaimed it. These observations, however, are foreign. The evidence was rejected on other grounds, before the trial had progressed to the proper point for the defendant to prove the authority of Thompson & Co.

In 2 Starkie Ev. 331, it is said, "If any *receipt* was given on the delivery of goods, it should be produced; and if any entry was made on the defendant's books, notice should be given to produce it, and also the way bill, if the goods were sent by coach. It should also be proved what orders were given at the time, as to the carriage of the goods and place of destination, and what were the written directions upon them."

This citation appears to me to contain almost any other doctrine than that the bill of lading or receipt is conclusive and final.


By the COURT:

That a *receipt* may be explained by parol evidence is a principle too familiar to require authorities for its support. The bill of lading is a *contract* including a *receipt*. It is a contract admitting

the reception of certain goods, with an agreement to carry them to the port of discharge; and the only doubt in the case is, whether the terms of this agreement, as reduced to writing, in the bill of lading, can be varied by parol. If the actual reception of the salt by the master, was the point in controversy, a different question would be presented. Such a case might come within the general rule of law, applicable to all receipts. But, in this case, it is agreed by all parties, that the salt was actually received by 347] the defendants, or their agent; and the only *question is, whether the agreement, for the transportation of the salt thus admitted to be received, can be changed by parol testimony.

The legal effect of this agreement, as reduced to writing, is, to carry the goods from Buffalo to Cleveland by the most direct route conveniently adapted to that purpose, dangers of the seas, etc., excepted. The defendants seek to avoid this legal effect and the consequences resulting from its violation, by showing that it was a part of the agreement that the schooner might touch at Otter Creek, a place out of the regular course, and where she could not go except by such agreement, and that the master refused to receive the salt upon any other terms. This evidence comes within the direct operation of the rule that you shall not engraft a parol condition upon a written contract. Serg. & R. 469; B. Mon. 535; 1 Starkie, n. *v.* 361.

We consider this point of the case settled in 2 Conn. 9. " Where the master of a vessel, receiving goods for transportation, gave the shipper a writing, acknowledging the receipt of goods, and stating that they were to be transported to the place of destination as customary freight, dangers of the seas excepted, it was held that a parol agreement between the shipper and master, before and at the time of giving the writing, as to the mode of stowing the goods, was inadmissible to show the terms of shipment, as all such communications between the parties are to be considered as merged in the writing."

But it is said that the court, in this case, admitted parol evidence of the custom of navigating Lake Erie. Evidence of this character is admissible, not to vary the contract, but for the purpose of carrying it into execution, as understood by the parties. This principle is laid down with great precision and force in 9 Wheat. 587. There is no rule of law better settled, or more salutary in its application to contracts than that which precludes the admission

of parol evidence to contradict or substantially vary the legal import of a written agreement. Evidence of usage or custom is, however, never considered of this character, but is received for the purpose of ascertaining the sense and understanding of parties by their contracts, which are made with reference *to such [348 usage or custom; for the custom then becomes a part of the contract, and may not improperly be considered the law of the contract; and it rests upon the same principles as the doctrine of the *lex loci*. All contracts are to be governed by the law of the place where they are to be performed; and this law may be, and usually is, proved as matter of fact. See Doug. 511; 4 Mass. 155; 3 Day, 146; 1 Caine, 43; 18 Johns. 220; 5 Cranch, 492.

The evidence of the collector of the port, to show that the vessel was at liberty to visit the Canada shore, without incurring a forfeiture, can have no effect as between these parties, and is also liable to the same objections as the other testimony rejected.

Motion overruled.