JOHN S. KING vs. THE HOUSATONIC RAILROAD COMPANY.

It is a well settled principle of the common law that the grant of the reversion of an estate expectant on the determination of a lease for years, passes to the grantee the rents reserved in the lease as incident to the reversion.

Since the statute of Anne, notice of the grant to the tenant has been sufficient in the English courts to entitle the grantee to demand and recover the rents.

And that rule has been adopted by the courts of this state, and by those of many of our sister states.

Where the grant of the reversion is by way of mortgage, the mortgagee, though entitled to the rents as incident to the reversion, may take them or not at his election. If he allows the mortgagor to receive them, and afterwards elects to take them himself, and gives notice of his election to the tenant, he becomes entitled to all the rents accruing after the execution of the mortgage and in arrear and unpaid at the time of the notice, as well as to those which accrue afterwards. But the rents in arrear at the time the mortgage was executed belong to the mortgagor

A railroad company leased its road to another company for five years, and after-
wards mortgaged the same property to trustees for the holders of certain
bonds, the mortgage providing that the mortgagees, on default of the payment
of the semi-annual interest on the bonds for six months, might enter and take
possession of the property and receive the rents and income. The mortgagees
entered for default of payment of interest, and gave notice to the lessees to
pay to them all rents then due or thereafter accruing. At this time a large
sum was due from the lessees for rent, and a few days after the entry a creditor
of the lessors factorized the lessees as debtors of the lessors for the rents over-
due. Held that these rents were not taken by the attachment, but belonged to
the mortgagees.

SCIRE FACIAS, upon a process of foreign attachment;
brought to the Superior Court in Fairfield County, and tried to
the court on the general issue with notice, before *Beardsley, J.*
The following facts were found by the court.

The New York, Housatonic & Northern Railroad Company,
owning a railroad lying partly within this state and partly
within the state of New York, on the first day of October,
1872, mortgaged all its corporate property and franchises to
Erastus F. Mead and David S. Dunscomb, as trustees for the
persons who might be holders of certain mortgage bonds,
issued by the company and secured by the mortgage, to the
amount of $2,000,000. The property conveyed by the mort-
gage deed was thus described:—"All the corporate property
and franchises of the said party of the first part, and also all
and singular its railroad lying partly in the state of New York
and partly in the state of Connecticut, constructed and to be
constructed, real estate, rails, fences, bridges, depots, shops,
tools, machinery, locomotives, engines, tenders, passenger,
freight, baggage and hand cars, and apparatus and utensils
of every kind whatsoever belonging to said party of the first
part, or which shall hereafter be acquired by it." The princi-
pal of the bonds was payable October 1st, 1892, with interest
payable semi-annually, and the mortgage contained the fol-
lowing provision with regard to defaults of payment:—"And
it is further covenanted and agreed by the party of the first
part that if any default shall be made in the payment of any
of the said bonds above mentioned or the interest warrants
or coupons that shall become due thereon, or any part thereof,
and should the same remain unpaid and in arrear for the

space of six months, then and from thenceforth, that is to say, after the lapse of the said six months, it shall be lawful for the said parties of the second part, their successors and assigns, to enter into and upon all and singular the property real and personal hereby granted or intended so to be and every part thereof, and to sell and dispose of the same, and all benefit and equity of redemption of the said party of the first part, its successors and assigns therein, at public auction according to law, giving due notice of the time and place of any such sale or sales.    *    *    And the parties of the second part and their successors are hereby fully authorized and empowered, with the aid and assistance of any person or persons, to enter into and upon, and to take possession of, the railroad of the said party of the first part and its equipments, and all and singular the real and personal property hereinbefore mentioned or described, for the benefit of the holders of the said bonds so to be issued under this mortgage as aforesaid, to retain and keep possession thereof, and to use and operate the same, and receive the rents, issues, income and profits thereof for the purpose aforesaid, until a sale thereof as hereinbefore provided, or as may be decreed by a court of competent jurisdiction, rendering an account to the party of the first part, its successors or assigns, and paying the surplus moneys to arise therefrom, after paying all costs, charges and expenses, to or towards the principal or interest moneys due or to grow due on the said bonds or said taxes and assessments above specified."

On the 26th day of February, 1872, previous to the execution of the foregoing mortgage, the New York, Housatonic & Northern Railroad Company, by a lease in writing of that date, leased its railroad in this state to the Housatonic Railroad Company for the term of five years from March 1st, 1872, and thereupon the last named company took possession of that part of the road and has held possession of it ever since under the lease. Under this lease there was due to the New York, Housatonic & Northern Railroad Company from the Housatonic Railroad Company, on the 20th day of March, 1875, the sum of $2,215.60 as rent under the lease.

On that day the plaintiff brought a suit against the former company, to recover a debt of $3,341 due him from that company, and factorized the latter company as the debtor of the former, intending thereby to attach the rent so due.    The suit was prosecuted to final judgment, which was rendered in favor of the plaintiff against the New York, Housatonic & Northern Railroad Company for the above sum and costs of suit, upon which judgment due demand was made upon the garnishees and payment refused, and the present action of scire facias was thereupon brought against the Housatonic Railroad Company.

Previous to the service of the factorizing process upon the Housatonic Railroad Company, the New York, Housatonic & Northern Railroad Company had become, and had been for more than a year, largely in default in the payment of its interest coupons, and on the 15th of March, 1875, the trustees delivered to the Housatonic Railroad Company the following notice :

" *To the Housatonic Railroad Company:* You will take notice that default having been made in the payment of the coupons or interest warrants of the bonds issued by the New York, Housatonic & Northern Railroad Company secured to be paid by a mortgage executed by said company to us as trustees, bearing date October 1st, 1872, we do hereby, pursuant to the terms of said mortgage, require and demand of you the payment to us of any and all the rents and sums of money now due or owing, or which may hereafter be or become due and owing by you upon the lease or agreement held by you from said New York, Housatonic & Northern Railroad Company for the use and occupation of so much of its road-bed and property as has been or may hereafter be used or occupied by you, situated in the state of Connecticut. Dated New York, March 4th, 1875.

DAVID S. DUNCOMB, } Trustees."
ERASTUS. F. MEAD,  }

Upon these facts the court rendered judgment for the defendants, and the plaintiff brought the record before this court by a motion in error.

*A. S. Treat,* with whom was *R. Averill,* for the plaintiff in error.

The question in this case is whether a mortgagee after notice of the mortgage to a tenant in possession under a lease made prior to the mortgage, is entitled to the rent as against an attaching creditor of the mortgagor. At common law he would not be. By the statute of Anne the common law was changed. In *Moss* v. *Gallimore,* 1 Douglass, 279, it was holden that a mortgagee after notice to a tenant under a prior lease was entitled to the rent. This decision was expressly based upon the statute. The statute never having been enacted in this state has as such no force here. Our ancestors expressly rejected the common law. 1 Colonial Records, 509; *Fitch* v. *Brainard,* 2 Day, 189; *Fish* v. *Fish,* 1 Conn., 559; *Card* v. *Grinman,* 5 id., 168; *Baldwin* v. *Walker,* 21 id., 181. In all the decided cases and in all the text-books where the doctrine claimed by the mortgagees here is laid down or recognized as law, the authority traced back leads to the case of *Moss* v. *Gallimore* and to no other. At common law livery of seizin or possession being essential, and a mortgagee being in possession by his tenant—in order to perfect the conveyance the tenant was required to attorn to the mortgagee. The possession of the tenant being the possession of the landlord, attornment being a change of landlords was a change of possession. But the statute provided "that all grants of reversions should be as good and effectual to *all intents and purposes*" without attornment as with. By mere force of the statute delivery of a deed became a delivery of possession, and the mortgagee of the reversion being in contemplation of law in possession was therefore entitled to the rent. The notice required by the statute was solely for the protection of the tenant, but conferred no rights on the mortgagee beyond the rights he had from his mortgage. In this state there is no distinction between a grant of a reversion and a grant of any other interest in real estate. A mortgagee in this state and in New York, where this mortgage was made, takes the interest in lands conveyed by the mortgage (be it a reversion or whatever it may be) merely as

security, leaving the ownership for all other purposes in the mortgagor. *Leonard* v. *Bosworth,* 4 Conn., 421; *Huntington* v. *Smith,* id., 235; *Clark* v. *Beach,* 6 id., 150; *Toby* v. *Reed,* 9 id., 224; *Cooper* v. *Davis,* 15 id., 556; *Packer* v. *Rochester & Syracuse R. R. Co.,* 17 N. York, 283; *Power* v. *Lester,* 23 id., 527; *Trimm* v. *Marsh,* 54 id., 599. A mortgagor in possession is as regards the rents and profits the real owner. *Lacon* v. *Davenport,* 16 Conn., 341; *Bank of Ogdensburgh* v. *Arnold,* 5 Paige, 38; *Astor* v. *Turner,* 11 id., 436; *Clason* v. *Corley,* 5 Sandf., 447, 454; *Cheney* v. *Woodruff,* 45 N. York, 98; *Mitchell* v. *Bartlett,* 51 id., 447.; *Galveston R. R. Co.* v. *Cowdrey,* 11 Wall., 459; *Gilman* v. *Illinois & Miss. Telegraph Co.,* 91 U. S. Reps., 603. In *Am. Bridge Co.* v. *Heidelbach,* 94 U. S. Reps., 798, it was holden that mortgagees are not entitled to rent until possession is taken under the mortgage and then only from the time possession is taken. But the defendants claim that mortgagees of reversions are an exception to the rule. No reason however can be given why one mortgagee should be preferred to another. No case can be found where it has been holden that a mortgagee of a reversion could recover rent without an attornment or something by statute expressly made equivalent thereto. "A mortgagee of a reversion is entitled to rent after notice, but cannot recover it by suit unless the lessee has attorned." 2 Swift Dig., 292; 1 Smith Leading Cases, 697; 4 Kent Com., 166; *Baldwin* v. *Walker,* 21 Conn., 181. In the last case, which was an action by a mortgagee of a reversion, the tenant Walker, before any rent became due upon notice promised to pay it to the plaintiff; not doing so the plaintiff brought his suit and alleged an attornment, which the defendant denied. This question of fact was tried by the parties and committed to the jury in the charge of the court. The plaintiff recovered because the jury found an attornment. No question was made about the effect of the notice. Here the defendants claim the rent by virtue of their notice, without any attornment. "Rent is incident to reversion;" true—so are rents and profits incident to title, but neither are incident to mortgages. The mortgage itself provides that the trustees

may take possession and then "receive the rents, &c." Possession is indispensable. If these mortgagees claim possession how did they obtain it? By deed? Surely not; titles are conveyed in this state by deed, but not possession. By their notice? Hardly; possession is not taken with paper.

*H. B. Harrison* and *W. K. Seeley*, for defendants in error, cited *Barber* v. *Hartford Bank*, 9 Conn., 409; *Peck* v. *Northrop*, 17 id., 216, 219; *Baldwin* v. *Walker*, 21 id., 168, 179, 182; *Smyth* v. *Ripley*, 33 id., 310; *Harris* v. *Phœnix Ins. Co.*, 35 id., 310; *Mitchell* v. *Winslow*, 2 Story, 639; *Newall* v. *Wright*, 3 Mass., 153; *Fitchburg Cotton Manuf. Co.* v. *Melven*, 15 id., 268; *Burden* v. *Thayer*, 3 Met., 76, 79; *Russell* v. *Allen*, 2 Allen, 42; *Kimball* v. *Lockwood*, 6 R. Isl., 138; *Seymour* v. *Canandaigua & Niagara Falls R. R. Co.*, 25 Barb., 284, 302; *Field* v. *Mayor &c. of New York*, 6 N. York, 179; *Galena &c. R. R. Co.* v. *Menzies*, 26 Ill., 121; *Dunham* v. *Isett*, 15 Iowa, 284; *Pope* v. *Briggs*, 9 Barn. & Cress., 245; 2 Redf. on Railways, 3d ed., 537 to 547 and notes; 1 Smith's Lead. Cas., (H. & W. ed.,) 595 to 606; 1 Washb. R. Prop., book 1, ch. 16, sec. 4, art. 29; Taylor's Landlord & Tenant, § 119.

HOVEY, J. The proceedings below were upon a *scire facias*, to recover certain rents due from the defendants as lessees of the New York, Housatonic & Northern Railroad Company. The lease reserving the rents was executed on the 26th day of February, 1872, and was for the term of five years from the 1st day of March then next, when the defendants entered into possession under the lease. Subsequently, on or about the first day of October, 1872, the lessors, being the owners of the leased premises, mortgaged the same, with other property situate in the state of New York, to secure the payment of certain bonds of the mortgagors, amounting to the sum of two million dollars, to David S. Dunscomb and Erastus F. Mead, as trustees for those who might become holders of the bonds. The principal of the bonds was made payable on the first day of October, 1892, and the interest semi-annually on

the first day of April and the first day of October in each year, upon the presentation and surrender of the interest warrants or coupons which were annexed to the bonds. And the mortgage expressly authorized the mortgagees, after six months' default in the payment of interest, to enter into and take possession of the property mortgaged and receive the rents, income and profits thereof. Soon after the execution of the mortgage the bonds passed into the hands of *bonâ fide* holders for value, and still remain outstanding and unpaid. The mortgagors having made default in the payment of interest more than six months prior to the 15th day of March, 1875, and interest to a large amount being then due and unpaid, the mortgagees on that day gave notice thereof to the defendants and demanded of them the rents then due and thereafter to become due under their lease. Five days afterwards the plaintiff commenced a suit by foreign attachment against the mortgagors, the New York, Housatonic and Northern Railroad Company, and attached the rents then due, amounting to the sum of $2,215.60. In that suit the plaintiff recovered judgment, took out execution, placed the execution in the hands of a proper officer, and the officer, by virtue of the execution, on the 23d day of December, 1875, made demand of the present defendants of the sums contained in the execution and of any estate of the New York, Housatonic and Northern Railroad Company in their hands, but the defendants refused to comply with the demand. And on the 21st day of February, 1876, the suit upon which the proceedings below were had was brought. The court below rendered judgment in favor of the defendants; and the question is whether in so doing the court erred.

It is a well settled principle of the common law that the grant of the reversion of an estate expectant on the determination of a lease for years, passes to the grantee the rents reserved in the lease as incident to the reversion. Co. Litt., 151, 152; 2 Bl. Comm., 176; 4 Kent, 354. The consent of the tenant, expressed by what was called his attornment, was, however, necessary to the perfection of the grant in England, until the fourth year of the reign of Queen Anne; but in that

year a statute was passed which made the grant effectual without attornment. And since that time notice of the grant to the tenant has been sufficient to entitle the grantee to demand and recover the rents. *Birch* v. *Wright*, 1 T. R., 384; *Lumley* v. *Hodgson*, 16 East, 99.

Where the grant is by way of mortgage, the mortgagee, though entitled to the rents as incident to the reversion, may take them or not at his election. If he elects not to take them, as he generally does so long as his interest is paid, he may forbear to give notice to the tenant, and in that case the mortgagor is authorized to collect the rents and appropriate them to his own use. But if the mortgagee elects to take the rents and gives notice of his election to the tenant, he then becomes entitled to all the rents accruing after the execution of the mortgage and in arrear and unpaid at the time of the notice, as well as to those which accrue afterwards. But the rents in arrear at the time the mortgage was executed belong to the mortgagor. The leading authority for this doctrine is the case of *Moss* v. *Gallimore*, Doug., 279. The decision in that case seems to have settled the law in England. 2 Cruise Dig., 84; *Birch* v. *Wright*, supra; *Trent* v. *Hunt*, 9 Exch., 14. And its soundness, in view of the relations of a mortgagor and mortgagee of a reversion to each other and to a tenant in possession under a lease prior to the mortgage, cannot well be questioned. In commenting upon the decision, the learned English editor of Smith's Leading Cases observes that it "is upon a point which seems so clear in principle that, were it not for its general importance, it would, perhaps, be matter of surprise that any case should have been deemed requisite to establish it." 1 Smith's Lead. Cas., 693. It is true, as suggested by counsel for the plaintiff, that the court, in making that decision, was governed by the provisions of the statute of Anne. But the principle embodied in that statute, and enforced in the case of *Moss* v. *Gallimore*, has been adopted by the courts of last resort in many of our sister states (4 Kent, 165); and was expressly sanctioned and approved by this court in the case of *Baldwin* v. *Walker*, 21 Conn., 168. In that case one Stoddard, being the owner of

an undivided half of certain real estate, leased it to the defendant for a term of years and afterwards mortgaged it to the plaintiff. The defendant had notice of the mortgage, but refused to pay to the plaintiff the rent due under the lease; and the plaintiff sued in an action of covenant to recover it, and judgment was rendered in his favor. The case then came to this court upon a motion for a new trial, and also upon a motion in error. Both motions were unsuccessful, and the judgment below was affirmed. CHURCH, C. J., in giving the opinion of the court, after referring to the lease, and declaring that as between Stoddard the lessor and the defendant the lease must be treated as an effective one and as leaving when made a reversion in Stoddard, says:—"By his mortgage to the plaintiff this reversion, as a subsisting legal interest, was conveyed or assigned to the plaintiff, unless he elected to treat it as void. This he has not done, but claims, as he may, his right as mortgagee or assignee to the rent incident to such reversion;" citing 2 Cruise's Dig., 111; *Moss* v. *Gallimore*, Doug., 279; 2 Swift Dig., 179; *Fitchburg Manuf'g Co.* v. *Melvin*, 15 Mass., 268. The learned judge then observes that, "if the lease had been executed *after* the mortgage to the plaintiff, he could not as mortgagee, perhaps, have any remedy for the recovery of this rent, without attornment, for want of legal priority." That case is decisive of the one at bar and fully sustains the court below in the judgment which it rendered in favor of the defendants. The judgment must, therefore, be affirmed.

In this opinion the other judges concurred.