THE TUNGSTEN COMPANY OF AMERICA *vs.* FREDERICK
C. BEACH ET AL.
THE LONG HILL QUARRIES COMPANY *vs.* THE TUNGSTEN
COMPANY OF AMERICA.

* First Judicial District, Hartford, March Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, JS.

By the terms of its contract with the original lessee, the plaintiff, a
tenant of undeveloped mining property containing tungsten-bear-
ing minerals, agreed not only to make the monthly payments of
rent required by the terms of the original lease, but also to make
payments of not less than $500 each month, which were to be
credited by its landlord on the purchase price of the property, in
case the tenant elected to buy it and completed the purchase;
otherwise they were "to be paid and received as consideration for
the current monthly enjoyment of the rights and privileges hereby
granted." *Held:*—

1. That the $500 monthly payments were not "rent," within the mean-
ing of § 4045 of the General Statutes, which excused the tenant
from the payment of rent for a tenement which was, without his
fault or neglect, so injured as to be unfit for occupancy.

2. That the premises in question were not occupied as a "tenement"
within the meaning of the statute, especially as the fire, which
destroyed the old and dilapidated buildings, did not render the
premises unfit for occupancy for the purpose of developing the
mine and extracting ore therefrom, which was obviously an im-
portant consideration in the minds of the contracting parties.

The owner of the premises agreed to carry a reasonable amount of fire
insurance on the leased premises and to apply the amount received
of the insurance company in the event of a fire, to the restoration
of the property destroyed. He neglected however to take out any
insurance. *Held* that if the application of a reasonable amount
toward the cost of restoration by the owner, would be of no avail
or benefit to the tenant unless the tenant expended a much larger
sum from its own pocket, a court of equity would not compel the
owner to go ahead in the restoration of the property, in the absence
of an allegation or finding that the tenant had obligated itself to
make the necessary supplemental expenditure.

Argued March 5th—decided April 30th, 1918.

* Transferred from third judicial district.

ACTION to recover damages for an alleged breach of contract to keep premises occupied by the plaintiff insured against fire for its benefit, in which the Long Hill Quarries Company, one of the defendants, filed a cross-complaint against Beach, the other defendant, for damages and for an adjudication of their respective rights in and to the premises; also an action by the Quarries Company against the Tungsten Company to recover possession of the leased premises, for a cancellation of the sublease, and for other equitable relief; brought to the Superior Court in Fairfield County and referred to a committee who found and reported the facts; the court (*Maltbie, J.*) accepted the committee's report, found the statements thereof to be true, and reserved the causes and questions arising therein for the advice of this court.

On May 28th, 1915, the defendant Beach leased to the Quarries Company a tract of about sixty acres of land on which was located an undeveloped mine containing tungsten-bearing minerals, with buildings and machinery more or less adapted to the operation of the mine, for a term of five years with the privilege of renewal for ten years, and an option of purchase for $25,000, both lease and option running to the lessee's assigns. The lease also contained the following provision which gives rise to this litigation: "The lessor will carry a reasonable amount of fire insurance on the property hereby leased, and in the event of partial or total destruction by fire, will apply said insurance funds, if so requested by the lessee, to the restoration of the property destroyed."

In January, 1916, the Quarries Company entered into a contract with Lyons and Grey, which is claimed by the Tungsten Company to be an absolute assignment of the lease, and by the other parties to be an operating lease of the mine and a contract for the sale

of the Quarries Company's option of purchase, at an agreed price of $125,000, payable in monthly instalments of not less than $500 during the continuance of the term.

The Tungsten Company, as the successor in interest of Lyons and Grey, entered into the enjoyment of the premises, made certain improvements required by its contract, and operated the mine until May 20th, 1916, when the buildings were totally destroyed by a fire of unknown origin. The buildings were old and dilapidated, with an actual value of $11,000 and a replacement cost—allowing for salvage of foundations—of $28,000. A reasonable amount of insurance to be carried was $8,000. After the fire it developed that Beach had not kept his agreement to carry fire insurance.

Shortly after the fire the Tungsten Company made a demand upon Beach for the payment to it of a reasonable amount of fire insurance to be applied in restoring the destroyed property. The Quarries Company made a similar demand. Later the Tungsten Company made demand on Beach and on the Quarries Company for the application of a reasonable amount of fire insurance to the restoration of the premises, and notified the Quarries Company that under § 4045 of the General Statutes it was not liable to pay rent, although remaining in possession, because the premises had been rendered untenantable by a fire occurring without its fault or neglect.

Thereafter the Tungsten Company ceased to operate the mine, and failed to make the payments of rent and instalments of purchase price required by the terms of the contract. Other material facts are stated in the opinion.

*Spotswood D. Bowers* of New York City, for the Tungsten Company.

*Arthur M. Marsh* and *Philo C. Calhoun,* for the Long Hill Quarries Company.

*Edward K. Nicholson,* for Frederick C. Beach.

BEACH, J.   All of the questions arising in the two cases were argued together, and as they arose out of the same transaction or series of transactions and, in the view which we take, depend, except as to the cross-complaint, upon the same questions of law, they will be discussed in one opinion.

The first question is whether the Tungsten Company is entitled to recover damages in its action against Beach and the Quarries Company, and we are of opinion that it is not so entitled, for the reason that by its continued default in the payment of rent and of instalments of the purchase price it has lost all right and interest in the premises.

The Tungsten Company claims that its admitted default in making these payments is excused by § 4045 of the General Statutes, which provides, in substance, that the tenant of a tenement which is, without his fault or neglect, so injured as to be unfit for occupancy, shall not be liable to pay rent so long as the premises remain untenantable. · We think this statute does not apply to this case.   In the first place it applies only to rent, and all payments required by a lease as a condition of occupancy are not necessarily and for that reason only to be regarded as rent or additional rent. *Filene's Sons Co.* v. *Weed,* 245 U. S. 597, 38 Sup. Ct. 211.   Under this contract the obligation of the Tungsten Company was not only to make monthly payments of rent based on the terms of the original lease from Beach to the Quarries Company, but also to make monthly payments of not less than $500, which are expressly described in the contract as monthly instalments to be credited on the purchase price in case the purchase is

completed, otherwise "to be paid and received only as consideration for the current monthly enjoyment of the rights and privileges hereby granted." It is argued that this language characterizes the payments as additional rent; but on the face of the contract and in view of the undeveloped speculative value of the mine, we are of opinion that the two classes of payments called for by the contract are distinct and based upon separate considerations.

One of the specific agreements of the Tungsten Company was to develop the mine as speedily as possible. It was important that the value of the mine—assuming that it had value—should be promptly ascertained, and the provision for the payment of at least $500 a month on the purchase price was intended and adapted to prevent any delay on the part of the Tungsten Company in carrying out its agreement to speedily develop the mine. In short, this was the price paid for the continued enjoyment of the right to purchase the Quarries Company's option.

The statute does not apply to instalments of the purchase price of leased property, but only to rent, and the consequence of a default in the payment of such instalments, continued for thirty days, is fixed by the contract, which provides that in such case the Quarries Company, at its option, may terminate the contract and recover possession of the premises. This it has elected to do, and, on the facts found, the rights of the Tungsten Company under the contract are at an end.

There are other reasons why the statute does not apply to this case. These premises are not, in our opinion, occupied as a "tenement" within the meaning of the statute. The original Act, passed in 1869, referred only to a "building," and the substitution of the word "tenement" in the Revision of 1875 was perhaps with reference to including parts of buildings also. The

Act was so construed in *Miller* v. *Benton,* 55 Conn. 529, 13 Atl. 678. It is not likely that the revisers intended to so enlarge the statute as to cover all kinds of real estate. In fact Judge Baldwin remarked in *Gulliver* v. *Fowler,* 64 Conn. 556, 565, 30 Atl. 852, speaking of another change in the original Act made by the revisers, that the change in the phraseology "was evidently made simply for the sake of brevity, and did not affect its legal construction."

At any rate, it is safe to say that the property must be of such a nature and occupied for such a purpose as to be rendered substantially untenantable for that purpose, before the liability to payment ceases. In this case the occupancy of the Tungsten Company was not only that of a tenant under an operating lease, but also that of a purchaser under an agreement to develop the mine and to pay instalments on the purchase price; and the finding of the committee is that the property "was not rendered by the fire unfit for occupancy or untenantable for the purpose of development of the mine nor for extracting ore therefrom commercially. The same was rendered by the fire unfit for occupancy and untenantable for the purpose of concentrating and refining tungsten ore." That is to say, the premises were untenantable for some of the purposes for which they were occupied and not untenantable for others, and we cannot say that the purposes for which they were still tenantable are not just as important under the contract as the purposes for which they were unfit for occupancy.

The conclusion that the Tungsten Company has lost all right and interest in the premises under the contract, determines the judgment which must be awarded as between the plaintiff and the defendants in the case of the Tungsten Company v. Quarries Company and in the case of the Quarries Company v. Tungsten Company.

The remaining question relates to the cross-complaint in the first-named case, brought by the defendant Quarries Company against the defendant Beach, for damages and for a decree settling the rights and obligations of the parties to the cross-action.

As to the claim for damages, it is enough to say that the committee has not found that the Quarries Company has suffered any damages.

As to the second prayer for relief, the committee has found that $8,000 is the reasonable amount of fire insurance which Beach agreed to carry, and the proceeds of which he agreed to apply, if requested, to the restoration of the buildings destroyed. It is also found that it would cost $28,000 to restore the buildings, and not found that the expenditure of $8,000 by Beach would substantially benefit the tenant. A court of equity will not compel Beach to expend $8,000 for the benefit of the tenant, unless the tenant would be benefited thereby. Possibly the lessee might, by a supplemental expenditure out of its own pocket, make the expenditure of $8,000 by Beach so beneficial as to warrant a decree requiring Beach to make it. Such possible action by a court of equity could, however, be taken only after the tenant had obligated itself to make the necessary supplemental expenditure, and no allegation or finding to that effect appears on the record.

The Superior Court is advised to render judgment for the defendants in the case of the Tungsten Company of America v. Frederick C. Beach; to render judgment for the plaintiff to recover possession of the premises in the case of The Long Hill Quarries Company v. The Tungsten Company of America; and to render judgment for the defendant Beach in the cross-action by the Quarries Company against Beach.

In this opinion the other judges concurred.