THE HARTFORD REALIZATION COMPANY *vs.* THE TRAVELERS INSURANCE COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 4th—decided July 18th, 1933.

*James E. Rhodes,* with whom, on the brief, was *Warren Maxwell,* for the appellant (defendant).

*Abraham S. Bordon* and *Joseph Klau,* for the appellee (plaintiff).

MALTBIE, C. J. On October 10th, 1924, Pasquale M. D'Esopo mortgaged to the defendant, to secure a note for $600,000, a large business block in the central portion of the city of Hartford. The note provided that interest should be paid semi-annually, that $10,000 should be paid annually upon the principal beginning October 10th, 1925, and that the mortgagor should pay all taxes upon the premises and keep the buildings insured. Neither note nor mortgage contained any provision that, upon default in the payment of any interest or instalment the due date of the note should be accelerated, but the mortgage did contain these provisions: "As further and additional security for the performance of the terms and conditions of this mortgage, and for the payment of the amounts stipulated in the note secured thereby, the grantor hereby agrees that in case of default in any of the payments stipulated in said note, and so long as such default con-

tinues, the grantee is hereby authorized and empowered, by its servants, Agents, or Attorneys, to enter upon the mortgaged premises and to collect and receive the rents therefrom, and to apply the same to the payment of amounts due upon said note. And for this purpose, and in case of such default, the Grantor hereby assigns, transfers and sets over to the Grantee, the rents accruing from said premises during the period of such default. Nothing contained in the foregoing provision shall impair or affect any right or remedy which the grantee might now or hereafter have, were it not for said provision, but the remedy therein given shall be in addition to any others which the grantee may have hereunder."

The only instalment of principal which was paid was that due October 10th, 1925, and thereafter the defendant did not insist upon the payment of instalments of the principal, but all interest due was paid as provided in the mortgage including that due October 10th, 1932. The equity in the property after several conveyances became vested in a private banking company, Pallotti, Andretta & Company, Inc. In December, 1930, this company was restrained from further business by the bank commissioner and in January, 1931, a receiver was appointed for it. On January 12th, 1932, John L. Bonee became receiver in succession to others previously appointed. Thereafter and before the next instalment of interest became due Bonee had an interview with L. Edmund Zacher, the president of the defendant, in regard to the mortgage and particularly with respect to any action by the defendant upon default in the payment of instalments of the principal; and Zacher told him he would not bother him for a couple of years. Relying upon the assurance so given him, Bonee as receiver paid the interest due April 10th, 1932, and that due October 10th, 1932, amounting in

each instance to about $18,000, and also made an arrangement with the tax collector of the city as to taxes upon the property under which before December 29th, 1932, he paid taxes to the amount of $18,000. Bonee, believing this property the most valuable asset of the banking company, applied all available income to pay the interest and taxes upon it, making no tax payments upon a number of other pieces of real estate in his hands as receiver. Before December 29th, 1932, the receiver had expended more than $38,000 in excess of the receipts from the building in paying interest and taxes, making repairs, and discharging other obligations and, had these not been paid by him and had the defendant foreclosed its mortgage, it would have had to discharge them. The property at the time this action was brought was appraised at a fair market value of $800,000.

The plaintiff was organized, with the approval of the Superior Court in the receivership proceedings, to take over the assets of the banking company for the benefit of its stockholders, who composed about seventy per cent of the depositors of the banking company. On December 29th, 1932, under order of court, most of the assets in the hands of the receiver were sold and transferred to it; and as a part of the transaction the receiver transferred to the plaintiff by bill of sale back rent due from tenants of the building amounting to about $14,000 and also all rights or causes of action to which he as receiver was entitled. The plaintiff entered into possession of the building at noon December 29th, 1932. Bonee had employed John B. Murphy to manage the building and collect the rents and he was so acting and maintaining an office in the building for that purpose on that day. At three p. m. on the same day the defendant, without notice to or demand upon the plaintiff, engaged Murphy as its agent and directed

him to instruct tenants not to pay rent to the plaintiff. Murphy continued thereafter to maintain an office in the building and notified the tenants as instructed by the defendant; and they were also notified by the defendant by letter to pay rent either to it or to Murphy as its agent. Thereafter the defendant collected rents from the tenants including some that were overdue on December 29th, 1932, and was continuing to collect rent at the time this action was tried.

On December 30th, 1932, the plaintiff notified the defendant and Murphy that it regarded the defendant's action as illegal and would hold it liable for any rents collected. On January 26th, 1933, this action was brought, seeking an injunction to restrain the defendant from collecting rents and an accounting by it of rents collected which were due on December 29th, 1932, or became due during the month of January, 1933. The trial court concluded that the defendant's entry into possession of the building was by constructive force and against the objection of the plaintiff and constituted an ouster of it, that the method pursued by the defendant was not that required by law and that it was not entitled to collect any rent due on December 29th, 1932. It gave judgment enjoining the defendant from collecting rents from tenants in the building and for an accounting of rents collected as demanded in the complaint. From this judgment the defendant has appealed.

The complaint alleges that the defendant by its servants and agents has established offices in, and assumed entire control of the employees and the maintenance of, the building and that its acts have resulted in the plaintiff being ousted of possession. Under these allegations we must regard the defendant as having ousted the plaintiff from the premises and itself taken possession of them. Under the theory of mortgages which

we have always followed in this State a mortgagee gets the legal title to the property and in the absence of an agreement or other circumstances debarring him from so doing, is entitled to possession. *Desiderio* v. *Iadonisi,* 115 Conn. 652, 654, 163 Atl. 254. He may assert this right against a mortgagor in possession by an action of ejectment. *Chamberlain* v. *Thompson,* 10 Conn. 243, 251. In *Rockwell* v. *Bradley,* 2 Conn. 1, it was held that no notice to the mortgagor or demand for possession was necessary as a precedent to the bringing of the action, and in *Wakeman* v. *Banks,* 2 Conn. 445, this position was reaffirmed.

If a mortgagee has a right to take possession of the mortgaged property it follows that he has an immediate right of entry, which, unless he violates some other principle of law, he may assert without bringing an action. *Clark* v. *Beach,* 6 Conn. 142, 151; 2 Swift's Digest, 169. In *McKelvey* v. *Creevey,* 72 Conn. 464, 467, 45 Atl. 4, we stated that, except for a limited purpose, the mortgagee's title is considered to be personal estate and mere security, but added that he was regarded as holding the legal title for certain purposes, mainly to enable him to obtain possession of the property "by ejectment or otherwise." If a mortgagee, having the right of possession, can peaceably occupy the premises and is permitted peaceably to retain them, he may do so without bringing any action. The limitation upon that right, aside from such as arises out of some agreement, waiver, estoppel or the like, consists in the fact that entry cannot be made or possession retained in violation of the statutes against forcible entry and detainer. General Statutes, §§ 5889-5892. The plaintiff to recover for forcible entry or detainer must "prove an entry by the defendant with what is called strong hand—as, with an unusual number of people, with weapons, with menaces,—or ac-

companied with some circumstances of actual violence, calculated to intimidate the plaintiff, and deter him from asserting or maintaining his rights. . . . An entry which has no other force than such as implied by law in every trespass, is not a forcible entry within the meaning of the statute. . . . To make a detainer forcible, the same kind and degree of force, or indications of violent designs, must be exhibited." *Gray* v. *Finch,* 23 Conn. 495, 515. If a mortgagee cannot obtain and retain possession of the property without violating these statutes, he must resort to an appropriate action at law. *Mason* v. *Hawes,* 52 Conn. 12.

Leaving out of the case the provisions in the mortgage concerning entry, the defendant, unless the assurance of Zacher to Bonee alters the situation, had a right of entry upon the premises which it might and did assert. It is of no moment whether or not those provisions were binding upon the plaintiff as successor to D'Esopo in the ownership of the equity. If they were not, as the plaintiff claims, the defendant was in a position to assert its rights under the principles we have stated. If they were, the most that can be said is that, instead of leaving the parties to the operation of those principles, the mortgage expressly gave the defendant a qualified right of entry, "in case of default in any of the payments stipulated in said note, and so long as said default continues." This limitation would apply despite the concluding statement in the portion of the mortgage we have quoted, that nothing in the preceding provision should impair any right or remedy the defendant might have but the remedy given in them should be in addition to any others the defendant might have; for it could not have been the intention of the parties to render nugatory the express agreement as to entry by any such sweeping language as that contained in that statement. When the de-

fendant took possession of the premises, the instalment payments upon the principal of the mortgage had not been paid for some years and while it is not expressly found, the whole situation unmistakably implies that they were still unpaid when the judgment in this action was rendered, so that, as far as the terms of the mortgage might control, the defendant had a right under them to enter and take possession of the premises. This it did in an entirely peaceable manner and so far as the record shows its possession was thereafter peaceably maintained.

If the defendant did not have the right to take possession of the property, it must be because of the arrangement made between its president and Bonee while he was receiver. Whether or not the assurance given the latter would have constituted an agreement enforcible in behalf of the receiver we do not need to inquire. So far as the record indicates, the plaintiff, while organized for the benefit of some seventy per cent of depositors of the banking company, was entirely independent of and distinct from the receivership and we can only assume that it dealt with the receiver in the purchase of the assets in his hands as would any corporation which was a stranger to the receivership. We cannot construe the assurance given Bonee as intended for the benefit not only of the receiver but also of one who might by purchase from him thereafter become owner of the equity of redemption. No such intent is expressed and the situation of the parties was such that the only reasonable interpretation, in the absence of any finding of circumstances indicating the contrary, is that it was intended to protect the receiver in his administration of the estate. Indeed, had the equity in the premises been sold to one in no way connected with the receivership or with creditors of the banking company, it could

hardly be maintained that he could have claimed the benefit of the promise; nor would he in all probability have purchased the property without either securing some further assurance from the defendant or preparing himself to meet the overdue instalments. If Zacher's assurance to Bonee could be considered as a binding agreement, the benefit of it cannot be extended to the plaintiff as successor in title to the property.

Nor is the plaintiff in a position to claim the benefit of that assurance by way of a waiver or estoppel. The waiver would be limited by the intent of the parties and, as we have stated, we cannot find upon this record an intention upon the part of the defendant to withhold its right beyond the time during which the receiver was in possession. Whether or not the defendant would have been estopped to take possession of the property as against the receiver, we do not need to inquire. As far as the plaintiff is concerned it does not appear that it purchased the property in reliance upon the assurance given Bonee, or indeed even knew of it, so that it could not in its own right claim an estoppel. Estoppels arising out of representations at times unquestionably extend to the protection of those who are in privity of estate with the person to whom they are made; 21 C. J. 1179; but merely because one is in privity of estate with the person to whom they are made does not of itself constitute him a successor to the rights of the latter under the estoppel. In this case, if, as we must assume upon this record, Zacher's statement to Bonee went no farther than to assure the latter that he would not disturb him in his possession as receiver, then the estoppel came to an end when the property was sold and the plaintiff has no right to rely upon it. *Townsend Savings Bank* v. *Todd,* 47 Conn. 190, 217; *Canfield* v. *Gregory,* 66 Conn. 9, 17, 33 Atl. 536; *Weidmann* v. *Springfield Breweries*

*Co.,* 78 Conn. 660, 664, 63 Atl. 162; *Goldberg* v. *Parker,* 87 Conn. 99, 107, 87 Atl. 555.

The plaintiff claims in its brief that even though under ordinary circumstances the defendant would have been entitled to take possession of the property, the situation here is one of such hardship and unconscionable advantage that equity ought to intervene. But, even conceding that the plaintiff might under certain circumstances be entitled to relief upon such a ground, the case was not decided upon any such issue and the finding is wholly lacking in facts upon which such a claim can be based. We must therefore disregard it.

The defendant had the right to take and hold possession of the premises as it did. Having done so, it was entitled at least to collect any rentals thereafter falling due during the time there was a default in payment of instalments due under the note, being liable, upon foreclosure or redemption of the premises, to account for them. *Desiderio* v. *Iadonisi,* 115 Conn. 652, 654, 163 Atl. 254. The remaining question concerns the rentals which had become due before the defendant took possession. In *King* v. *Housatonic R. Co.,* 45 Conn. 226, we held that where a lease was made prior to the execution of a mortgage, the mortgage operated as a conveyance of the reversion, giving to the mortgagee the right by notice to a tenant to collect rents due under the lease, though they were in arrears when the notice was given; but in that case we referred to a statement made in an earlier case, *Baldwin* v. *Walker,* 21 Conn. 168, 181, to the effect that as to leases made after the execution of the mortgage, the mortgagee could not "perhaps" recover the rents without attornment, for want of legal privity. In *Beach* v. *Beach Hotel Corporation,* 113 Conn. 716, 720, 156 Atl. 865, we held that where a mortgagee had foreclosed there

was no privity between him and a tenant under a lease originating after the mortgage was executed and that it was only by attornment to the mortgagee or some recognition of a holding under him that the tenant came to occupy any contractual relationship to him express or implied; and this would be true as regards a mortgagee taking possession of the property before foreclosure.

In the instant case, the defendant, by its notices to the tenants, evinced an intent to continue existing leases and the tenants by the payments made recognized that they were holding under it. *Winestine* v. *Ziglatzki-Marks Co.*, 77 Conn. 404, 407, 59 Atl. 496. When the plaintiff, as successor in title to the mortgagor, lost possession of the premises, it lost its right to collect rent thereafter accruing under the leases subsequent to the mortgage. But the effect of an attornment is to establish a new contractual relationship, to create a new privity of estate; hence it does not pass any right to collect rent in arrears at the time it is made. *Massachusetts Hospital Life Ins. Co.* v. *Wilson*, 51 Mass. (10 Metc.) 126; *Anderson* v. *Robbins*, 82 Me. 422, 19 Atl. 410; 1 Tiffany, Landlord & Tenant, pp. 180, 414. The defendant by taking possession of the property, its notices to tenants and their payment of rent to it, acquired no right to rent in arrears under leases subsequent to its mortgage. The mortgage, after stating that, as further security for the performance of the terms of the mortgage and the payment of the amounts due under it, the mortgagor might in case of default and so long as default continued, enter upon and take possession of the premises and collect the rents, continues: "And for this purpose, and in case of such default, the grantor hereby assigns, transfers and sets over to the grantee, the rents accruing from said premises during the period of such default." By

its very terms this assignment is limited to rents accruing during the default and it is not possible to read this provision without coming to the conclusion that the "purpose" was not to create an additional security for the payment of the debt apart from the power of entry and collection given just before, but that it was inserted in aid of that power and was conceived as making more sure and easy the collection of rents after entry. It does not add to the rights which the defendant acquired by such entry and the following steps it took. This being so, as it acquired by its entry no right to collect arrears in rentals under leases made subsequent to the execution of its mortgage, the provision we have quoted gave it none.

It follows that the defendant had the right to enter upon the premises and to collect the rents paid to it which accrued after that entry, and rents then in arrears under any leases prior to its mortgage, but not rents then in arrears under leases subsequent to its mortgage.

There is error, the judgment is set aside and the cause is remanded to be proceeded with according to law.

In this opinion the other judges concurred.