CARFIELD & SONS, INC., Plaintiff-Appellant and Cross–Appellee,

v.

Alda A. COWLING, Richard C. Schmoll, Defendants–Appellees and Cross–Appellants,

and

Krug, Inc., Defendant–Appellee.

No. 79CA1036.

Colorado Court of Appeals, Div. III.

Sept. 4, 1980.

Wood, Herzog, Osborn & Bloom, P.C., Charles S. Bloom, Fort Collins, for plaintiff–appellant and cross–appellee.

Michael J. Kudla, Longmont, for defendant–appellee and cross–appellant Richard C. Schmoll.

RULAND, Judge.

Plaintiff, Carfield and Sons, Inc., sued to recover lost profits on a building contract and to foreclose a mechanic's lien against

property owned by defendant Alda A. Cowling and leased by defendant Richard C. Schmoll. Defendant, Krug, Inc., intervened and also asserted rights to a lien. Following a trial to the court, it awarded Carfield and Krug only part of the amount claimed. Both Carfield and Schmoll appeal.

The following facts are not in dispute. Carfield entered into a contract with Schmoll whereby Carfield agreed to erect a steel building for Schmoll for a total price of $58,747. The contract was signed on June 19, 1978, and called for completion of the building by September 1, 1978. Pursuant to the contract, Schmoll made an initial payment to Carfield of $5,870.

On August 4, 1978, Schmoll wrote Carfield a letter requesting a refund of the initial payment because of Carfield's failure to make any progress towards erection of the building. Shortly thereafter, the steel building arrived at the site, and Schmoll agreed that Carfield could proceed. Schmoll issued a check for $15,000 to Carfield.

Carfield subsequently engaged Krug to pour the concrete. After pouring the foundation for the building on August 18, Krug poured the concrete floor. The parties agree that a concrete floor of this type should be allowed to cure for seven days prior to the time that any heavy weight is placed on it. On August 21, one of Krug's employees drove a gravel truck onto the concrete floor. Schmoll was present and ordered the gravel truck off the concrete asserting that it would damage the floor.

The evidence of the parties is in sharp conflict as to what transpired after Schmoll ordered the gravel truck off the concrete. According to Carfield's evidence, one of its employees met with Schmoll, promised to take reasonable steps to repair any damage caused by the truck, and requested that Carfield be allowed to proceed with the erection of the building. However, Schmoll demanded that some 4,000 square feet of the concrete be removed and replaced before he would allow Carfield to proceed.

Carfield then met with Krug and obtained for Schmoll a one year written guarantee on all materials and workmanship for the floor. However, Schmoll continued to insist that the concrete be replaced, and he stopped payment on the $15,000 check. Carfield could detect no evidence of damage to the floor and concluded that Schmoll's demand was unwarranted. Carfield presented evidence to the effect that by doubling the size of its work crew, the building could have been erected by September 1 without placing weight on the floor and that any necessary repairs to the concrete could have been undertaken thereafter since the completed building would have large overhanging garage doors allowing entry of the necessary equipment.

Schmoll testified that following a discussion of the intrusion of the gravel truck, he directed Carfield not to place any weight on the concrete floor for an additional 7 days, and advised Carfield that any damaged concrete would have to be replaced. Carfield responded by indicating that Schmoll was in breach of the contract. Carfield removed its work crew and threatened to remove the steel building, and Schmoll stopped payment on the check. Nevertheless, Schmoll still expected Carfield to return in 7 days and erect the building. He stated that he would have permitted Carfield to finish the job if Carfield could repair the concrete floor or prove that nothing was wrong with it.

The evidence is not in material conflict as to the sequence of events thereafter. Carfield removed the steel building about August 26 and sold it in order to mitigate its damages. The concrete was not in fact damaged by the gravel truck, and subsequent tests disclosed that the concrete floor exceeded the contract requirements as to strength based upon pounds per square inch measurements. Schmoll acquired another steel building and erected the building over the floor.

During the course of the trial, Schmoll requested leave to amend his answer in order to assert a counterclaim alleging that the concrete floor was not uniformly 4 inches in depth as required by the contract. Leave to amend the answer was denied.

Following presentation of evidence by the parties, the trial court determined that Carfield and Schmoll had both "rescinded" the contract, awarded Carfield an amount for installation of the concrete, but refused to award any lost profits. While the court found that there was no damage to the concrete, it stated that it could not "fault . . . Schmoll too much for saying the deal is off and thinking he probably didn't have to pay for any concrete and could make somebody tear it out," and that Schmoll "should not pay any penalties or any loss for a contract that was not fulfilled and could only have been fulfilled by waiting a long period of time beyond the deadline of the contract and checking the cement out . . . ."

Carfield contends that the trial court erred in determining that the contract was rescinded and in not awarding lost profits on the contract. Schmoll contends that the trial court erred in not allowing an amendment to the answer in order to assert an additional counterclaim. We conclude that the case must be remanded for additional proceedings.

■■■■ The breach of contract by Krug (and thus Carfield) in not insuring that the driver of the gravel truck stayed off the concrete floor does not terminate Schmoll's obligations under the contract unless "that breach is a major breach going to the essential condition of the contract." *Utah International, Inc. v. Colorado Ute Electrical Ass'n, Inc.*, 425 F.Supp. 1093 (D.Colo.1976). *See also Gregerson v. Weatherly*, 160 Colo. 414, 417 P.2d 769 (1966). No such breach occurred in this case because the concrete was not damaged. However, we interpret the trial court's findings to mean that Schmoll reasonably believed that such a breach had occurred. Therefore, we conclude that in order to avoid liability under the contract, Schmoll was obligated to request adequate assurance of performance. If Carfield then refused to provide that assurance, Schmoll could treat the contract as terminated. *See Restatement (Second) of Contracts* § 275 (Tent. Draft No. 9, 1974).

While Carfield presented evidence seeking to establish that such assurance was given, Schmoll, in effect, denied that any assurances of performance were made. The trial court did not address this issue in its findings. The trial court's finding that Schmoll would have had to wait "a long period" to determine whether the concrete was damaged is to no assistance in the resolution of this issue. This because Carfield's evidence, if believed, would establish that the building could have been erected in a timely manner and that adequate provision had been made for repair of the concrete. On the other hand, if Schmoll's evidence is accepted, he was prepared to allow Carfield to proceed at the end of 7 days upon receipt of adequate assurance of performance, but such assurance was never given.

■■■■ We may not consider Schmoll's contention that the trial court erred in denying his request to add an additional counterclaim since he failed to file a motion for new trial as required by C.R.C.P. 59.

The judgment is reversed and the cause remanded to the trial court for additional findings consistent with the views expressed in this opinion.

KELLY and STERNBERG, JJ., concur.