CONFERENCE CENTER LIMITED *v.* TRC—
THE RESEARCH CORPORATION
OF NEW ENGLAND
(10683)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued November 8, 1982—decision released February 8, 1983

*George A. Dagon, Jr.,* for the appellant (plaintiff).

*Alan R. Baker,* with whom, on the brief, were *Edwin G. Hebb, Jr.,* and *Michael L. Roy,* for the appellee (defendant).

PETERS, J.  The issue in this case is whether a tenant has been constructively evicted when served with a demand for immediate possession by a mortgagee initiating foreclosure proceedings against the tenant's landlord.  The plaintiff, Conference Center Limited, brought an action against its tenant, the defendant TRC—The Research Corporation of New England, seeking damages for the defendant's allegedly wrongful abandonment of the leasehold premises.  The defendant, in its reply, raised a number of special defenses based upon the foreclosure action brought by Hartford Federal Savings and Loan Association against Conference Center Limited.  The trial court, after a hearing, granted the defendant's motion for summary judgment and the plaintiff has appealed.

The underlying facts are established in the pleadings of the parties and in two memoranda of decision by the trial court, one by *Wright, J.,* sustaining the defendant's objections to the plaintiff's motion to strike the defendant's first, second and third defenses, and one by *O'Donnell, J.,* granting the defendant's motion for summary judgment on these three special defenses.  No issue has been taken on this appeal with any of the facts thus established.

The plaintiff, Conference Center Limited (hereinafter CCL) and the defendant, TRC—The Research Corporation of New England (hereinafter TRC) entered into a two-year commercial lease on July 7, 1977. The tenant, TRC, took possession of the premises on September 12, 1977.

The leasehold premises were subject to a prior mortgage executed on May 5, 1972, by the plaintiff's predecessor in title to the Hartford Federal Savings and Loan Association (hereinafter the Bank), and duly recorded. On January 19, 1978, when the plaintiff had been in default on the mortgage for many months, the Bank initiated foreclosure proceedings. In that action, the Bank served the defendant with a demand for immediate possession of the leasehold premises. Thereafter, on February 27, 1978, the defendant vacated the premises and returned the keys thereto to the plaintiff. This litigation ensued.

In response to the plaintiff's complaint seeking damages arising out of the defendant's alleged breach of its leasehold contract, the defendant filed both an answer denying breach and several special defenses. The first three of these special defenses grew out of the foreclosure action and maintained that the foreclosure proceedings had resulted in: (1) a termination of the lease; (2) a breach of the covenant of quiet enjoyment in the lease; and (3) a constructive eviction. The plaintiff filed a motion to strike these defenses.[1] The trial court, *Wright, J.,* in sustaining the defendant's objections to the motion to strike, treated these three special defenses jointly and focused primarily upon the

---

[1] The plaintiff's motion also addressed the defendant's seventh special defense but the merits of that defense, which the trial court also refused to strike, are not presently before us.

claim of constructive eviction. The court held that "[i]n yielding possession upon demand, defendant acted at its peril and assumes the burden of proving that the Bank's request was made under a paramount title . . . . Under these circumstances, the plaintiff's motion to strike the first, second and third special defenses is premature."

Some seven weeks after the pleadings had been closed, the defendant moved for summary judgment. In response, the plaintiff attempted belatedly to amend its reply to the defendant's special defenses. The proffered amendment sought to raise, by way of avoidance, the defendant's anticipatory determination to vacate the premises even before the foreclosure had begun, and the assurance given the defendant by the Bank that the defendant's possession would not actually be disturbed.

The trial court concluded that this amendment should be disallowed because it came too late. The court further concluded that, whether or not the amendment were allowed, there existed no genuine issue of material fact. Adopting the legal principles articulated in the memorandum of decision on the earlier motion to strike, the court granted the defendant's motion for summary judgment.

In its appeal from this judgment, the plaintiff CCL raises three issues: (1) the trial court erred in denying its motion to strike, since initiation of a foreclosure action by a mortgagee does not constitute a constructive eviction of the mortgagor's tenant; (2) the trial court erred in denying its motion to amend; and (3) the trial court erred in granting the motion of the defendant TRC for summary judgment, since there were unresolved

issues of material fact. While we agree with the trial court that the motion to strike and the motion to amend were properly denied, we conclude that the court acted prematurely in granting the defendant's motion for summary judgment.

Because the issues raised by the motion to strike and the motion for summary judgment address various facets of the same underlying substantive question, they are most appropriately discussed jointly. The claimed error relating to refusal to permit amendment of the plaintiff's pleadings raises a separate procedural issue that we must resolve first, however, since its resolution has implications for the underlying substantive question.

I

When the defendant filed its motion for summary judgment on July 21, 1980, some seven weeks had passed since the pleadings had been closed by the plaintiff's "reply to special defenses and counterclaim," filed on June 2, 1980. On August 11, 1980, the day that the motion for summary judgment was set down for a hearing, the plaintiff filed its request to amend, its proposed amendment to its reply and its objection to the motion for summary judgment, to which was attached an affidavit raising questions of fact related to the subject matter of the proposed amendment. On this state of the record, the trial court concluded that the amendment had come too late and refused to permit it.

The law is well-settled that belated amendments to the pleadings rest in the sound discretion of the trial court. Practice Book § 176; *Rahmati* v. *Mehri,* 188 Conn. 583, 588, 452 A.2d 638 (1982); *Lawson* v. *Godfried,* 181 Conn. 214, 216–17, 435 A.2d 15 (1980). While a trial court may be well-advised to exercise

leniency when amendments are proffered in response to a motion for summary judgment, rather than on the eve of trial, we have affirmed as discretionary the denial of permission to amend under such circumstances in *Citizens National Bank* v. *Hubney*, 182 Conn. 310, 313, 438 A.2d 430 (1980). Since, in this case also, there is no clear evidence of an abuse of discretion, there is no error in the court's ruling on the motion to amend.

We note, however, that the information which the plaintiff sought to bring to the attention of the court was contained not only in its motion to amend but also in its counteraffidavit contesting the defendant's motion for summary judgment. In order to effectuate its proper and timely opposition to summary judgment, the plaintiff was entitled, indeed obligated, to file an affidavit reciting evidentiary matter to establish the existence of a genuine issue as to a material fact. Practice Book §§ 380, 381; *Plouffe* v. *New York, N.H. & H. R. Co.*, 160 Conn. 482, 490, 280 A.2d 359 (1971). We may therefore consider, as did the trial court, with regard to the motion for summary judgment, the relevant factual allegations contained in the plaintiff's affidavit of August 11, 1980. *Citizens National Bank* v. *Hubney*, supra, 312. Since these allegations require the plaintiff to undertake the difficult challenge of providing evidence, in advance of trial, of the mental state of the defendant and of the Bank, the mortgagee, we are willing to take into account whatever relevant information the plaintiff was able to provide. See *Batick* v. *Seymour*, 186 Conn. 632, 645–46, 443 A.2d 471 (1982). As did the trial court, we therefore turn to the substantive question on the basis of all of the evidence proffered by both parties.

## II

This court has not previously ruled on the effect that a paramount mortgagee's institution of foreclosure proceedings has on rights and liabilities under a subsequent, and hence subordinate, lease. To resolve this issue, we must take account of three convergent areas of the law: under mortgage law, the right of a mortgagee in a "title" jurisdiction to possession of mortgaged premises; under landlord-tenant law, the right of a tenant to enforce a covenant of quiet enjoyment; and under commercial law, the right of a contracting party to adequate assurance of receiving due performance.

It is undisputed that a mortgagee in Connecticut, both by common-law rule and by statute, is deemed to have taken legal title upon the execution of a mortgage on real property. General Statutes § 47-36h; *State* v. *Stonybrook, Inc.,* 149 Conn. 492, 496, 181 A.2d 601, appeal dismissed, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227 (1962); *Leonard* v. *Bailwitz,* 148 Conn. 8, 12, 166 A.2d 451 (1960); *City Lumber Co. of Bridgeport, Inc.* v. *Murphy,* 120 Conn. 16, 19, 179 A. 339 (1935); *Hartford Realization Co.* v. *Travelers Ins. Co.,* 117 Conn. 218, 224, 167 A. 728 (1933); *Desiderio* v. *Iadonisi,* 115 Conn. 652, 654, 163 A. 254 (1932); *McKelvey* v. *Creevey,* 72 Conn. 464, 467, 45 A. 4 (1900); *Chamberlain* v. *Thompson,* 10 Conn. 243, 251 (1834). As a titleholder, in the absence of an agreement to the contrary, the mortgagee has a right to immediate possession against its mortgagor; *Hartford Realization Co.* v. *Travelers Ins. Co.,* supra; *Desiderio* v. *Iadonisi,* supra; *Chamberlain* v. *Thompson,* supra; and hence also against a tenant who derives his interest from the

mortgagor. *Darling Shop of Birmingham* v. *Nelson Realty Co.,* 262 Ala. 495, 500, 79 So. 2d 793 (1954); *George* v. *Putney,* 58 Mass. (4 Cush.) 351, 354, 50 Am. Dec. 788 (1849); 1 Friedman on Leases (1974) § 8.1, p. 290; Osborne, Mortgages (2d Ed. 1970) § 144, p. 235; Kratovil, Modern Mortgage Law and Practice (1981) § 20.05. If, after default, the mortgagee exercises his right to possession by an actual entry upon the mortgaged premises, such an entry, because it constitutes an eviction of the tenant, results in the termination of the tenant's lease. *Pabst Brewing Co.* v. *Thorley,* 145 F. 117, 122 (2d Cir.), cert. denied, 203 U.S. 597, 27 S. Ct. 784, 51 L. Ed. 333 (1906); *Net Realty Holding Trust* v. *Nelson,* 33 Conn. Sup. 22, 25, 358 A.2d 365 (1976); Kratovil, supra, § 20.05; Lesar, Landlord and Tenant § 3.48 in 1 Am. Law of Property (1952); Osborne, supra, § 144, pp. 237–38; 1 Tiffany, Real Property (3d Ed. 1939) § 139; Restatement (Second), Property § 4.3.

Mere institution of a foreclosure action by a landlord's mortgagee does not, however, ineluctably lead to the tenant's dispossession. In *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 376–77, 321 A.2d 444 (1973), this court upheld, as not violative of public policy, a provision in a lease which required a tenant to pay additional rent "in the event of the institution of a foreclosure proceeding by the Landlord's present or future mortgagee against the premises of which the leased premises are a part." Id., 372n. Although the tenant in *Collins* voiced a concern that the rent escalation clause might be triggered by a collusive foreclosure, we dismissed that concern as speculative. Id., 377. *Collins* impliedly recognized both the possibility that foreclosure actions will prompt negotiations

that lead to withdrawal of the foreclosure and the commercial desirability of arrangements between landlord and tenant that facilitate a working out of the mortgagor's financial difficulties.

From the vantage point of mortgage law, it is important therefore to note that the Bank in this case held title to the leasehold premises, and that this title was paramount to that of both the plaintiff CCL and the defendant TRC. The Bank manifested some intention to implement its paramount title, upon CCL's default, by commencing a foreclosure action in which it served the defendant with foreclosure papers demanding immediate possession. At the time when the defendant abandoned the premises, the Bank had not, however, exercised its power to enter into possession nor had it demanded a new lease from the defendant.

The Connecticut law of constructive eviction is equally not in dispute. The classic statement is that found in *Amsterdam Realty Co.* v. *Johnson,* 115 Conn. 243, 248, 161 A. 339 (1932), where this court held that "[a] constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable, and has thereby caused a failure of consideration for the tenant's promise to pay rent." A tenant is constructively evicted when compelled to yield possession to a third party with title paramount to that of its landlord. Such a constructive eviction may occur in advance of an actual eviction, "for, if he cannot hold lawfully, the law is not so unreasonable as to require him to hold unlawfully at the peril of a suit and certain judgment against him." *Camp* v. *Scott,* 47 Conn. 366, 369 (1879). To prove a constructive ouster,

however, the facts must demonstrate that the person with paramount title "[made] a re-entry on the premises, or in some other positive manner [asserted] the forfeiture of the lease." Id., 374. Whether there has been such interference with the tenant's peaceful enjoyment of the premises as to render the leasehold untenantable cannot be determined by general principles but depends instead on an "inquiry in every instance [into] the facts of the particular case. By this is meant the situation of the parties to a lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed." *Reid* v. *Mills,* 118 Conn. 119, 122, 171 A. 29 (1934); accord, *Thomas* v. *Roper,* 162 Conn. 343, 347, 294 A.2d 321 (1972); *Hayes* v. *Capitol Buick Co.,* 119 Conn. 372, 378–79, 176 A. 885 (1935); *Tungsten Co.* v. *Beach,* 92 Conn. 519, 524, 103 A. 632 (1918).

Authorities from other jurisdictions have discussed the point in time when a tenant is constructively evicted by a mortgagee's action to foreclose a paramount mortgage on the leasehold premises. Focusing on the requirement that the tenant demonstrate actual and serious deprivation of the use contemplated by the parties to the lease, the cases have refused to conclude that a constructive eviction necessarily follows from the mere initiation of foreclosure proceedings. See *John R. Thompson Co.* v. *Northwestern Mutual Life Ins. Co.,* 31 F. Sup. 399, 400 (N.D. Ohio 1937); *Standard Livestock Co.* v. *Pentz,* 204 Cal. 618, 625–26, 269 P. 645 (1928); *Hyde* v. *Brandler,* 118 A.2d 398, 399–400 (D.C. 1955); *Metropolitan Life Ins. Co.* v. *Childs Co.,* 230 N.Y. 285, 289, 130 N.E.

295 (1921). The secondary authorities, building upon these cases and a few others, have universally agreed with the Restatement (Second), Property (1977) § 4.3, comment d, that "[t]he institution of foreclosure proceedings by a mortgagee who has a paramount title is not an eviction of the tenant." See, e.g., 3 Friedman on Leases (1978) §§ 29.201, 29.202; 3 Thompson on Real Property (1959) § 1132, p. 499.

The defendant TRC urges us to reject these authorities because they emanate from jurisdictions that have rejected the "title" theory of mortgages. We find them distinguishable for a different reason. Read closely, the cases and the secondary authorities recognize that the overarching issue is not the particular step taken by the foreclosing mortgagee but rather its effect on the tenant's continued capacity to enjoy the use of the leasehold property. The Restatement itself, earlier in comment d to § 4.3, acknowledges that the tenant has been constructively evicted "[w]here the tenant has not been ousted from possession by the assertion of the paramount title but the assertion prevents the use contemplated by the parties." Friedman opines that "[n]ormally, the institution of possessory proceedings . . . is no breach of a covenant of quiet enjoyment." 3 Friedman on Leases (1978) § 29.202, p. 1089. Since the law of constructive eviction is fact-bound, no conclusive effect can be attached to the institution of mortgage foreclosure proceedings. In the proper circumstances; see *Thomas* v. *Roper,* supra, 346–47; initiation of such proceedings may well constitute a constructive eviction; under other circumstances it will not.

From the vantage point of the law of constructive eviction, it is therefore significant that while there

has been a formal demand for possession of the leasehold premises, the letter attached to the plaintiff's affidavit opposing summary judgment creates uncertainty about the extent of the mortgagee's intended interference with the defendant TRC's continued occupancy.[2] While offering the defendant some assurances, the letter, as the plaintiff CCL conceded at oral argument, falls short of committing the Bank to acceptance or ratification of the defendant's lease.

Put together, the law of mortgages and the law of landlord and tenant demonstrate that while the defendant TRC may have a valid defense to the

---

[2] The letter, dated January 26, 1978, was addressed to the defendant and signed by the assistant vice president of Hartford Federal Savings and Loan Association. It reads:

"Gentlemen:

"Hartford Federal Savings and Loan Association is instituting proceedings to foreclose the mortgage which it holds on 936 Silas Deane Highway, Wethersfield, Connecticut. It is the understanding of Hartford Federal Savings and Loan Association that each of you is occupying some space in the building and may have a lease. For technical legal reasons, you are being joined as party defendants in the foreclosure. In the event that the foreclosure goes to a conclusion and Hartford Federal Savings and Loan Association takes over as sole owner of the premises, it intends to have you stay in possession of your area provided that a mutually agreeable leasing arrangement can be worked out between you and Hartford Federal Savings and Loan Association. Hartford Federal Savings and Loan Association does not know the rental and other terms under which you are occupying the premises. Therefore, it would be helpful if you could send a copy of your lease to me at Hartford Federal Savings and Loan Association and if you do not have a written lease, kindly set forth your monthly rental arrangement in a letter to me.

"I would appreciate it if you would send this material as soon as possible so that we can come to a mutual understanding in respect to your future occupancy of the premises.

"Very truly yours,
Donald A. Ryder
Assistant Vice President"

plaintiff CCL's cause of action, the defendant has yet to prove it. At this juncture, it is clear that the trial court, *Wright, J.,* was correct in refusing to strike TRC's first three defenses and to leave TRC to its proof. The trial court, *O'Donnell, J.,* was, however, in error in concluding that TRC was entitled to summary judgment, since the actual impact of the foreclosure proceedings as a constructive eviction raises a genuine issue of material fact. Because a remand is therefore required in order for this question to be fully considered, it is useful to inquire what commercial law may add to fair resolution of the dispute between the parties.

The Connecticut law concerning commercial insecurity, although not in terms applicable to real property cases, provides by analogy a useful resource to enable contracting parties to deal with uncertainties about forthcoming performance. Under Uniform Commercial Code § 2-609, General Statutes § 42a-2-609, a contract "imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return." Failure to provide adequate assurance within a reasonable period of time "is a repudiation of the contract." As we stated in a recent sale of goods case interpreting § 2-609, when there is reasonable doubt about whether a contracting party's default is substantial, the injured party may be well advised to temporize by suspending further performance until it can ascertain whether

the defaulting party is able to offer adequate assurance of future performance. Nonetheless, even under the code, the defaulting party's conduct may be sufficiently egregious so that, without more, such conduct in and of itself constitutes substantial impairment of the contract and a present breach. *Cherwell-Ralli, Inc.* v. *Rytman Grain Co.,* 180 Conn. 714, 718, 433 A.2d 984 (1980); see generally White & Summers, Uniform Commercial Code (2d Ed. 1980) § 6-2.

This court has in the past looked to operative principles contained in the Uniform Commercial Code for a source of law that informs real property transactions as well as sale of goods transactions. Just as in *Hamm* v. *Taylor,* 180 Conn. 491, 494–95, 429 A.2d 946 (1980), we invoked the provisions of Uniform Commercial Code § 2-302, General Statutes § 42a-2-302, to provide a framework for resolving an issue of unconscionability with respect to a real property mortgage, so we may look to Uniform Commercial Code § 2-609 for assistance in determining whether there has been that substantial interference with possession or enjoyment which is the essence of constructive eviction. Cf. *Holt* v. *Seversky Electronatom Corporation,* 452 F.2d 31, 36 (2d Cir. 1971).

We note that courts in other jurisdictions have required a tenant who contemplates abandonment of the premises because of constructive eviction first to give his landlord notice and a reasonable opportunity to provide adequate assurance. See *Pague* v. *Petroleum Products, Inc.,* 77 Wash. 2d 219, 221, 461 P.2d 317 (1969); *Northwestern Realty Co.* v. *Hardy,* 160 Wis. 324, 326, 151 N.W. 791 (1915); accord 3 Friedman on Leases (1978) § 29.301, pp. 1107–1108; Lesar, Landlord and Tenant in 1

Am. Law of Property (1952) § 3.51, p. 283. That case law provides a further link to Uniform Commercial Code § 2-609, for the cases and the statute both recognize the desirability of providing an opportunity for dialogue to establish whether the parties intend to repudiate or to fulfill their contractual obligations.

Finally, we find support for recourse to § 2-609 as a source of general law in the provisions of § 251 of the Restatement (Second) of Contracts. Those provisions, which are not limited to contracts for the sale of goods, permit any obligee with reasonable grounds for insecurity to demand adequate assurance of due performance and to treat as a repudiation an obligor's failure to respond with an adequate assurance within a reasonable time.[3] Courts in other jurisdictions have applied § 251 to the resolution of disputes under construction contracts. See *David Nassif Associates* v. *United States,* 644 F.2d 4, 12 (Ct. Claims 1981); *L. E. Spitzer Co.* v. *Barron,* 581 P.2d 213, 216–17 (Alaska 1978); *Carfield & Sons, Inc.* v. *Cowling,* 616 P.2d 1008, 1010 (Colo. App. 1980).

Recourse to the commercial doctrine of insecurity is equally appropriate for the resolution of disputes concerning constructive eviction, for such disputes

[3] "[2 Restatement (Second) Contracts] § 251. WHEN A FAILURE TO GIVE ASSURANCE MAY BE TREATED AS A REPUDIATION

"(1) Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would of itself give the obligee a claim for damages for total breach under § 243, the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such assurance.

"(2) The obligee may treat as a repudiation the obligor's failure to provide within a reasonable time such assurance of due performance as is adequate in the circumstances of the particular case."

frequently require inferences to be drawn about future conduct and future expectations for beneficial enjoyment of the leasehold premises. Foreclosure proceedings may provide the incentive for finding alternate financing which discharges the paramount mortgage, so that the tenant's possessory use may remain utterly unimpaired. *John R. Thompson Co.* v. *Northwestern Mutual Life Ins. Co.*, 31 F. Sup. 399, 400 (N.D. Ohio 1937). Access to a continued stream of rental payments, because it facilitates a workout of the mortgage, is therefore in the interest of both the landlord and the mortgagee. See the discussion of *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 321 A.2d 444 (1973), supra, and Kratovil, Modern Mortgage Law and Practice (1981) §§ 20.03, 20.05; Osborne, Mortgages (2d Ed. 1970) § 144.

From the vantage point of commercial law, the Bank's institution of mortgage foreclosure proceedings which formally demanded surrender of possession by TRC certainly gave TRC reasonable grounds for insecurity, as that term is used in Uniform Commercial Code § 2-609. At that time, TRC became entitled to request some form of adequate assurance of due performance.[4] On a full trial, the parties will be able to present evidence whether some kind of request for assurance triggered the Bank's letter of January 26, 1976, and whether, measured according to commercial standards; U.C.C. § 2-609(2); that letter, or other communications, offered adequate assurance of due performance. It bears emphasis, however, that fail-

---

[4] Since Uniform Commercial Code § 2-609 is applicable only by analogy, there is no need to incorporate its formal requirement that a request for assurance must be made in writing, if the circumstances demonstrate that the landlord knew or had reason to know of the tenant's insecurity.

ure adequately to respond to TRC's insecurity, although it would strengthen TRC's case for constructive eviction, is not essential to TRC's defense if TRC can otherwise establish breach of the warranty of quiet enjoyment. See *Cherwell-Ralli, Inc.* v. *Rytman Grain Co.,* supra. In any case, issues arising out of the law of commercial insecurity, like those of constructive eviction generally, because they are necessarily fact-bound, require a full trial and preclude summary judgment.

Applying these various legal principles to the decisions of the trial court, we conclude that *Wright, J.,* was correct in denying the plaintiff's motion to strike the defense of constructive eviction, and that *O'Donnell, J.,* was in error in granting the defendant's motion for summary judgment. Only a full trial can establish whether the defendant was in fact constructively evicted or was entitled, for lack of adequate assurance, to infer that its lease had been terminated.

There is error, the judgment is set aside, and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.