[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an application for a Pre-judgement Remedy by the plaintiff landlord (L) to secure his claim for damages resulting from an alleged breach of a lease.
On or about 7/23/91 the parties entered into a 2 year written lease with an option to buy with an agreed rental of $2,200 per month payable on the 30th of each month. The lease expired by its terms on 8/30/93. The option provision of the lease, paragraph 29, provided that same could be exercised at least 90 days prior to the expiration of the lease by written notice and a tender of 1% of the agreed upon price of $240,000. The lease further provided that in the event of an exercise, tenants would be entitled to a credit of $400 for each month of rent paid provided tenants had not been late in the payment of rent in excess of 30 days. Other relevant provisions of the lease included a late payment provision (para 30) requiring a payment of $110 after 10 days; a repair/maintenance provision in which tenants assumed all responsibilities for repairs/maintenance to interior and exterior of the demised premises and a security deposit of $2,200.
The defendants took possession of the premises in accordance with the lease and rent was paid as due through August, 1992. In September, 1992 defendants tendered $1,800 rent which the L accepted with the understanding that defendants would pay the remaining $400 with the October rent. Defendants tendered only $1,800 in October leaving a shortage of $800. L nevertheless accepted this tender, again with the understanding that defendants would pay the accumulated shortage with the November rent. The November rent was also short $400. This time, although L accepted the incomplete tender he now imposed a late charge pursuant to the lease. Defendants admitted that they failed to pay the full rent for September, October and November due to financial difficulties they were then experiencing. However, in December the defendants withheld the entire rent and deposited it with their attorney because they had learned that foreclosure proceedings had been CT Page 10522 instituted against L and had received notice that L had filed for under Chapter 13.[1] No further tender of rent was made. L terminated the lease on or about March 1, 1993 with the service of a notice to quit. Nevertheless, the defendants continued to occupy the premises until May 8, 1993 when they vacated pursuant to a stipulated summary process judgement. However the defendants did not return the keys to the premises until 5/11/93.
At all times relevant, L never lost title to the subject premises either due to the pending foreclosure action or the bankruptcy proceedings nor was the defendants' tenancy ever disturbed by any act or threat of the mortgagee or trustee in bankruptcy. Finally, the record is devoid of any evidence that the defendants attempted to exercise their option to purchase at any time relevant hereto.
THE LAW
The defendant opposes the application claiming that the defendant was justified in withholding the rent because the institution of the foreclosure and bankruptcy actions effectively prevented L from performing his part of the lease agreement, to wit: transfering [transferring] title pursuant to the option; that in fact the plaintiff will owe them damages for such breach. In essence the defendants argue that they were justified in anticipating a breach of the lease by the plaintiff and thereby justified in withholding any future performance of the lease on their part. The defendants not only claim that the plaintiff is not entitled to any damages, but as a result of the plaintiff's breach of the lease, they have sustained damages in excess of those sought to be secured by the prejudgement remedy.
It is unnecessary to discuss the nature of the damages claimed by the defendants for the alleged breach of lease because that defense, at least as presented in this proceeding, is without merit.
An anticipatory breach is an unequivocal manifestation of an intent not to render the promised performance at the agreed upon time. Koski v. Lyles 37 Conn. Sup. 861, 863 (1981). It has also been held that the mere institution of an action of foreclosure by the landlord's mortgagee will not constitute a repudiation of the lease or furnish grounds to support a basis for an anticipatory breach. Conference Center, Ltd. v. TRC, 189 Conn. 212, 220-222. (1983). The court there held that it must be shown that the CT Page 10523 foreclosure will necessarily deprive the tenants of their interest in the property. Id. 221. In determining whether or not the act in question will have such an effect — that is, an unequivocal manifestation that the landlord will not or cannot perform his obligations when required, the focus must be on the effect that such act has on the continued contemplated performance by the tenants. See, Conference Center, Ltd, v. TRC, supra, 222.
Although the court in TRC speaks in terms of constructive eviction, the analogy of the principles therein enunciated to the instant case is nevertheless precisely a proposal. This is because whether the act in question is a constructive eviction or any other act (such as the defendant herein claims) which materially interfered with the tenancy, if its effect is to repudiate the lease, it would trigger the application of the doctrine of anticipatory breach. Id. 221; Koski v. Lyles, supra.
In the case at bar there is no evidence that the foreclosure action presented an imminent or serious risk that the mortgagee was going to assert its superior title to dispossess the defendants or for that matter, to prevent the landlord from conveying title to them pursuant to the option agreement. Moreover, the record is devoid of any evidence that the defendants ever made any effort or were even in a position to exercise their option at the times relevant to their decision to withhold rent. At best, the situation justified the defendant requiring adequate assurances from the landlord that he would indeed be able to perform his obligations under the lease and option. See, TRC, supra, 226-227. Instead, the defendants unjustifiably assumed a repudiation of the lease and acted accordingly. And, under the factual background of this proceeding, they acted at their peril.
Absent a showing that there was a serious risk of the tenants' dispossession by the mortgagee or some other imminent and serious interference with the landlord's contemplated performance of his obligations under the lease, this court concludes that the mere institution of foreclosure proceedings is insufficient to trigger the application of the doctrine of anticipatory breach or justify the withholding of rent. Conference Center, Ltd. v. TRC, supra.
The foregoing rationale is even more compelling with respect to the bankruptcy petition. In the case at bar the proceeding was a chapter 13 petition. Unlike the mortgagee, the trustee in bankruptcy does not have or acquire superior title to that of the landlord. To the contrary, title remains in the petitioner upon CT Page 10524 the institution of such proceedings. 11 USCS secs 363(b)(d)(e)(f) (f); Price v. Pierce International, Inc. v. Spicers International Paper Sales, Inc., 50 B.R. 25 (D.C. 1985). Since the mere filing of such petition presents no serious interference with the defendants' tenancy or conveyance of title pursuant to the option, there is no justification for them to discontinue performance of their obligations under the lease. Conference Center, Ltd. v. TRC, supra.
For these reasons the defendant cannot defeat plaintiffs application for a prejudgement remedy by proving damages in excess of the plaintiff's claim because the legal premise upon which such claim depends is itself faulty.
There being no other legal excuse for breaching the lease alleged in this action, the court concludes that the plaintiff has presented sufficient evidence to establish probable cause of the validity of his claim. Ledgebrook, Condominium Assn, Inc. v. Lusk Corporation, 172 Conn. 577 (1977).
DAMAGES
Other than the foregoing claims there is no serious dispute over the nature and amount of the damages claimed by the plaintiff in this proceeding. Consequently, the court finds that the plaintiff has established that the defendants owed a rent deficiency of $1,200 for the months of September, October and November, 1992 ($400 each month); back rent for the months of December, 1992, January and February, 1993 at $2,200 per month for a total of $6,600; use and occupancy for the months of March and April also at the rate of $2,200 per month and $806.63 for 11 days in May at the rate of $73.33 per day.[2] In addition, pursuant to the lease agreement L is entitled to a late fee of $660 for the 6 month period between September, 1992 and February, 1993 during which the lease was in effect and rent was either paid late or not at all. Therefore, the court finds the total probable damages to be $13,660. Accordingly, the court hereby GRANTS plaintiff's application for a Pre-judgement Remedy in the amount of $14,000.
BY THE COURT
MELVILLE, J.